April WALLACE, Vickie Gwin, et
al., Plaintiffs–Appellants,

v.

NATIONAL BANK OF COMMERCE,
et al., Defendants–Appellees.

Supreme Court of Tennessee,
at Jackson.

Nov. 4, 1996.

Order Denying Rehearing Jan. 27, 1997.

Ira M. Thomas, Al H. Thomas, Thomas & Thomas, Memphis, (Robert L. Green, Neely, Green, Fargarson & Brooke, Memphis, of counsel), for plaintiffs–appellants.

J. O. Bass, Jr., Nashville, Leo Bearman, Jr., John C. Speer, Monique A. Nassar, J. Richard Buchignani, Robert E. Craddock, Jr., Frank J. Glankler, Jr., Bill R. Hester, Memphis, H. Frederick Humbracht, Jr., Nashville, David Wade, Memphis, for defendants–appellees.

## OPINION

REID, Justice.

This case presents for review the decision of the Court of Appeals affirming the trial court's award of summary judgment for the defendants. The trial court found that the record shows, as a matter of law, that the defendant banks did not breach the duty of good faith in imposing fees for returned checks drawn on accounts with insufficient funds. This Court concurs in the decision made by the trial court and the Court of Appeals.

### The Case

Forty named plaintiffs filed suit against nine banks doing business in Shelby County asserting six separate causes of action, all based on the allegation that the banks charged "excessive" fees for checks drawn on accounts with insufficient funds ("NSF checks") and for third party checks deposited and returned unpaid ("DIR checks"). The plaintiffs seek compensatory damages, punitive damages, and treble damages. The trial court sustained the defendants' motions to dismiss the suit for failure to state a claim on which relief can be granted. The Court of Appeals, on the first appeal, affirmed the dismissal of all claims except the allegation that the banks breached a common law duty of good faith in the performance of their contractual obligations to their customers. On remand, the defendants' motions for summary judgment, based on the pleadings, affidavits, and stipulations, were granted by the trial court and the Court of Appeals affirmed.

### Analysis

This is an action for breach of written contract.[1] The Court of Appeals noted that the plaintiffs failed to comply with Rule 10.03, Tennessee Rules of Civil Procedure, regarding a claim founded upon a written instrument [2] but found that the references in the complaint to the substance of the deposit agreements upon which the plaintiffs base their suit meet the minimum requirements for stating a cause of action. In order to consider the merits of the case, this Court will defer to the Court of Appeals' decision.

The plaintiffs do not contend that there are disputed issues of material fact. They contend instead that the court erred in holding as a matter of law that the defendants did not breach the duty of good faith in

---

1. The Court of Appeals has held that in Tennessee there is no cause of action in tort for breach of the duty of good faith in the performance of a contract. *Solomon v. First American Nat'l Bank,* 774 S.W.2d 935, 945 (Tenn.App.1989). *See also* 17 Am.Jur.2d *Contracts* § 732 (1991).

2. "Whenever a claim or defense is founded upon a written instrument other than a policy of insurance, a copy of such instrument or the pertinent parts thereof shall be attached to the pleading as an exhibit...." Tenn.R.Civ.P. 10.03.

the performance of their obligations pursuant to the contracts between the banks and their customers.

The essential facts shown by the record are: each plaintiff had a checking account with at least one of the defendant banks; each account was opened upon the execution of a deposit agreement prepared by the bank and signed by the customer; the agreements provide that the customer agrees to the terms stated in the agreement, including service charges for NSF and DIR checks; each customer was informed, upon the execution of the deposit agreement, of the amount of the NSF and DIR fees; each customer also was informed that the fees were subject to change upon notice to the banks' customers; each customer was given notice prior to the effective date of the increase in fees; and each plaintiff was charged at least one service charge for an NSF or DIR check.

■ The first issue for consideration is the nature of the duty of good faith. In Tennessee, the common law imposes a duty of good faith in the performance of contracts. This rule has been considered in several recent decisions of the Court of Appeals. The law regarding the good faith performance of contracts was well stated by the Court of Appeals in *TSC Industries, Inc. v. Tomlin*, 743 S.W.2d 169, 173 (Tenn.App.1987):

> It is true that there is implied in every contract a duty of good faith and fair dealing in its performance and enforcement, and a person is presumed to know the law. *See* Restatement (2d) Contracts, § 205 (1979). What this duty consists of, however, depends upon the individual contract in each case. In construing contracts, courts look to the language of the instrument and to the intention of the parties, and impose a construction which is fair and reasonable.

In *Covington v. Robinson*, 723 S.W.2d 643, 645–46 (Tenn.App.1986), which was relied upon by the Court of Appeals in *TSC Industries, Inc. v. Tomlin*, the Court of Appeals held that in determining whether the parties acted in good faith in the performance of a contract, the court must judge the performance against the intent of the parties as determined by a reasonable and fair construction of the language of the instrument.

In a later decision, the Court of Appeals held that good faith in performance is measured by the terms of the contract. "They [the parties] may by agreement, however, determine the standards by which the performance of obligations are to be measured." *Bank of Crockett v. Cullipher*, 752 S.W.2d 84, 91 (Tenn.App.1988).

The present case is similar to a case in which the Oregon Supreme Court held that, as a matter of law, the bank acted in good faith. That court described the case as follows:

> This class action involves the obligation of good faith in the performance of contracts. The primary issue is the nature of the good faith obligation owed by defendant First National Bank of Oregon (Bank) to its non-business checking account customers (depositors) in setting and revising, from time to time, the fees it charged to depositors who wrote checks when there were not sufficient funds in their accounts (NSF fees).

*Tolbert v. First Nat'l Bank*, 312 Or. 485, 823 P.2d 965, 966 (1991). Upon finding facts very similar to the facts in the case before the Court, the Oregon court held:

> The uncontroverted evidence before the trial court on summary judgment in this case was that: (1) the depositors initially agreed that Bank could change the amount of the NSF fees in its unilateral discretion; (2) Bank's practice was to inform depositors of future changes to the NSF fees before such changes became effective; and (3) plaintiffs continued to maintain their accounts with Bank and, in some cases, even continued to write NSF checks after Bank informed them of the changes. No inference available to plaintiffs (other than flat disbelief, which is not an inference that plaintiffs may invoke on summary judgment) creates an issue of fact as to these pivotal circumstances. Based on this record, any *reasonable* expectations held by the depositors were met by Bank's procedures. As a matter of law, Bank acted in good faith in its treatment of the NSF fees; there was no issue regarding any material fact, and Bank was entitled to a judgment as a matter of law.

*Id.* at 971 (emphasis in original). That court's rationale regarding the duty to perform in good faith was stated as follows:

> We emphasize that it is only the objectively reasonable expectations of parties that will be examined in determining whether the obligation of good faith has been met. In the context of this case—when (1) the parties agree to (and their contract provides for) a unilateral exercise of discretion regarding changes in one of the contract terms, and (2) the discretion is exercised after prior notice—we hold as a matter of law that the parties' reasonable expectations have been met.

*Id.* at 970.

■ In this case, as in the *Tolbert* case, the contract authorized the banks to charge overdraft fees, the customers were advised regarding the amounts of those fees upon the execution of the deposit agreements, and they were advised of the increases in the fees before the increases became effective. The language of the agreements clearly states the terms and reflects the intent of the parties. Reason requires the conclusion that the plaintiffs could expect that the stated fees would be imposed on their NSF and DIR checks. Performance of a contract according to its terms cannot be characterized as bad faith.

■ The plaintiffs would avoid this conclusion by asserting that, even though the banks' acts in charging fees were consistent with the terms of the deposit agreements, those agreements were adhesive in nature and, therefore, provided the banks no authority to charge fees characterized by the plaintiffs as "too high," "excessive," and "in excess of the banks' own cost in handling the transaction."

■ Before addressing the plaintiffs' allegation that the deposit agreements are adhesive and, therefore, not enforceable, it should be noted that the common law duty of good faith in the performance of a contract does not apply to the formation of a contract. *See* Restatement (Second) of Contracts, § 205 cmt. c (1979). Consequently, the common law duty of good faith does not extend beyond the agreed upon terms of the contract and the reasonable contractual expectations of the parties. *See Sheets v. Knight*, 308 Or. 220, 779 P.2d 1000 (1989).

The plaintiffs' allegations raise two further questions—whether the deposit agreements are contracts of adhesion and, if they are contracts of adhesion, are the terms enforceable. This Court recently approved the following statement defining and setting forth the essential characteristics of an adhesion contract:

> An adhesion contract has been defined as "a standardized contract form offered to consumers of goods and services on essentially a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to the form of the contract." Professor Henderson has observed that "the essence of an adhesion contract is that bargaining positions and leverage enable one party 'to select and control risks assumed under the contract.'" Courts generally agree that "[t]he distinctive feature of a contract of adhesion is that the weaker party has no realistic choice as to its terms."

*Buraczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn.1996) (citations omitted).

The record in this case does not support the plaintiffs' claim that the agreements between the banks and their customers are adhesion contracts. Some of the characteristics of an adhesion contract are present, the deposit agreements are standardized forms, and, undoubtedly, the opportunity to open an account with a particular bank was presented on a take-it-or-leave-it basis. However, these factors standing alone are not sufficient. The record shows that the banks provided checking accounts which were exempt from overdraft charges. The record does not include a schedule of the charges, and, perhaps most significantly, there is no showing in the record that the customers had no realistic choice but to acquiesce in the imposition of the banks' charges. There is no showing that the fees were the same at all the defendant banks or that banking services could not be obtained

from other institutions. It is common knowledge that the banking industry is very competitive. For example, different banks may charge lower fees for some services and higher fees for other services, and they also may charge lower interest rates on loans but higher fees for services, thus providing choices which may appeal to various prospective customers. In the absence of a showing that there was no effective competition in the providing of services among the banks in the area served by the defendants, there is no basis for concluding that the appellants had no realistic choice regarding the terms for obtaining banking services.

■ And, further, not all adhesion contracts are unenforceable. Even if a contract is found to be adhesive, it is enforceable unless it is unduly oppressive or unconscionable. The Court discussed this issue in *Buraczynski v. Eyring:*

> Our conclusion that the contracts were contracts of adhesion is not … determinative of the contract's enforceability. *Enforceability generally depends upon whether the terms of the contract are beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable.* Courts will not enforce adhesion contracts which are oppressive to the weaker party or which serve to limit the obligations and liability of the stronger party.

*Buraczynski,* 919 S.W.2d at 320 (citations omitted). The California Supreme Court discussed this rule in *Graham v. Scissor–Tail, Inc.,* 28 Cal.3d 807, 171 Cal.Rptr. 604, 623 P.2d 165 (1981):

> Generally speaking, there are two judicially imposed limitations on the enforcement of adhesion contracts or provisions thereof. The first is that such a contract or provision which does not fall within the reasonable expectations of the weaker or "adhering" party will not be enforced against him. The second—a principle of equity applicable to all contracts generally—is that a contract or provision, even if consistent with the reasonable expectations of the parties, will be denied enforcement

> if, considered in its context, it is unduly oppressive or "unconscionable."

*Id.* at 172–173 (citations omitted).

As previously discussed, the reasonable expectations of the appellants were that fees would be imposed pursuant to the terms of the agreements. Further, based on the record before the Court, the provisions in the agreements regarding NSF and DIR fees were not oppressive or unconscionable.

The determination that, on the facts shown by the record, the defendants, as a matter of law, have not breached the common law duty of good faith in the performance of the contracts with their checking account customers resolves the issue presented in this case. The defendants' assertion that unconscionable and oppressive provisions of a contract cannot constitute the basis for a cause of action, but only can be pleaded in defense to an action for breach of contract, need not be considered.

The judgment of the Court of Appeals sustaining summary judgment for the defendants and dismissing the suit is affirmed.

Costs will be taxed to the plaintiffs.

BIRCH, C.J., and DROWOTA, ANDERSON and WHITE, JJ., concur.

### ORDER ON PETITION TO REHEAR

The petition to rehear filed by the plaintiffs-appellants insists that the Court should have remanded this case to the trial court for trial rather than dismiss the case on summary judgment.

The petitioners assert that at trial they can prove the defendants did not act in good faith and deal fairly, even though performance by each defendant bank was, as held by the Court, within the reasonable expectations of the parties to the contracts. The petitioners take exception to this Court's conclusion that the "plaintiffs do not contend that there are disputed issues of material fact" and suggest the Court was "led astray" because the case was before the Court on motions for summary judgment. The petitioners assert that with additional discovery they can "indeed generate a Record to substantiate all their claims." Those claims, according to the petition, include claims that the banks "intention-

ally" increased the number of checks on which charges could be made and "doubled NFS charges."

■ The petitioners did not appeal from the first decision of the Court of Appeals dismissing five alleged claims because they did not state a cause of action. Both the Court of Appeals and this Court put the best face possible on the remaining claim made in the original complaint[1] and found that it stated a cause of action for breach of good faith in the performance of a contract. In a joint motion for summary judgment on this surviving claim, the defendants asserted that when a customer, pursuant to the agreement with the bank, is notified of an increase in the service charges before it becomes effective, there is no genuine issue of material fact as to whether the increased fees are within the customer's reasonable expectations. The defendants' statement of the issue presented as "the amount" of the NSF charge is confirmed by the petitioners' response to the motion for summary judgment. The petitioners specifically state that the cause of action is "for the bank's breach of its implied covenant of good faith in setting the amount of its NSF charge."

■ The motion for summary judgment filed by the banks is based on affidavits showing that the petitioners knew the amount of the existing service charges when they opened their accounts and that the petitioners received prior notice of any change in those charges. Having established facts showing that the defendants acted in conformance with the terms of the contracts, the burden shifted to the petitioners to either counter the evidence presented or demonstrate that facts other than the amounts of the service charges support their claim that the defendants breached their duty of good faith in the performance of the contracts. The petitioners mistakenly assert that the allegations in their complaint must be taken as true in support of their position on motion for summary judgment. This is not an accurate statement of the law.

Once it is shown by the moving party that there is no genuine issue of material fact,

the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth specific facts showing that there is a genuine issue of material fact for trial. "If he does not so respond, summary judgment ... shall be entered against him."

*Byrd v. Hall,* 847 S.W.2d 208, 211 (Tenn. 1993); see also Tenn. R. Civ. P. 56.05. The petitioners presented no evidence in support of the claim now made that the banks intentionally increased the number of checks on which charges could be made or doubled NSF charges.

■ The petitioners' assertion throughout this case has been, as stated in their brief filed in the trial court, that the banks breached their "implied covenant of good faith in setting the amount of its NSF charge." The petitioners essentially are now contending that they can prove the banks are guilty of "oppressive" and "unconscionable" acts for which they are entitled to recover. The substance of their petition to rehear is that they can prove some cause of action other than breach of contract. No claim other than breach of contract is before the Court.

The Court reaffirms the decision that the record before the Court, which is all that can be considered, does not support the only cause of action asserted, that the banks breached the contracts between the banks and their customers.

The petition to rehear is denied.

The costs are taxed to the plaintiffs-appellants.

BIRCH, C.J., and DROWOTA and ANDERSON, JJ., concur.

WHITE, J., not participating.

---

1. In determining whether a complaint fails to state a claim upon which relief can be granted, "courts should construe the complaint liberally in favor of the plaintiff." *Cook v. Spinnaker's of Rivergate, Inc.,* 878 S.W.2d 934, 938 (Tenn.1994).