# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### August 28, 2001 Session

## BLAKE BURTON, ET AL. v. HARDWOOD PALLETS, INC., ET AL.

**Appeal from the Circuit Court for Hamilton County**
No. 98C1394     Samuel H. Payne, Judge

**FILED DECEMBER 13, 2001**

**No. E2001-00547-COA-R3-CV**

---

This appeal involves a dispute between the sellers of a business and the bank that financed a portion of the purchase price. The plaintiffs, Blake Burton and Michael Burton, entered into an agreement with the defendant, Hardwood Pallets, Inc.,[1] to sell the Burtons' pallet manufacturing business. As partial consideration for the sale, Hardwood Pallets executed an unsecured promissory note to the Burtons in the amount of $1,000,000. Additional consideration for the sale was obtained by way of an $800,000 loan from the defendant, AmSouth Bank, to Hardwood Pallets; as a part of the bank transaction, Hardwood Pallets pledged its assets as collateral. As a condition to the making of the loan, AmSouth required the Burtons to execute a subordination agreement. When Hardwood Pallets defaulted on the bank loan, AmSouth sold the collateral at a private sale. Litigation ensued. In addition to suing Hardwood Pallets and its shareholders, the Burtons sued AmSouth, alleging procurement of breach of contract and civil conspiracy to defraud. AmSouth filed a counterclaim, alleging that the Burtons breached the subordination agreement. It also filed a motion for summary judgment, asserting that it acted within its rights under the subordination agreement. The trial court entered a judgment in favor of AmSouth pursuant to Tenn. R. Civ. P. 54.02. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

Michael A. Anderson, Chattanooga, Tennessee, for the appellants, Blake Burton and Michael Burton.

Donald J. Aho, Chattanooga, Tennessee, for the appellee, AmSouth Bank.

### OPINION

---

[1]Hardwood Pallets, Inc., is not a party to this appeal.

I. *Background*

In 1997, the Burtons and Hardwood Pallets entered into negotiations for the sale of the Burtons' pallet manufacturing business. The asset purchase agreement executed by the Burtons and Hardwood Pallets provides for a total purchase price of $2,498,920, comprised of the following elements: $800,000 to be paid in cash; a $1,000,000 unsecured promissory note payable over 96 months; 72 equal monthly payments of $9,012.77 in exchange for the Burtons' covenant not to compete; and $50,000 to be paid immediately after the closing. To finance the purchase, Hardwood Pallets sought a loan from AmSouth Bank, pledging its assets as collateral. AmSouth agreed to make the loan, conditional upon it receiving a first security interest in the collateral and the execution by the Burtons of a subordination agreement in favor of AmSouth. Prior to closing, AmSouth transmitted copies of all closing documents, including the proposed subordination agreement, to the Burtons' counsel.

At the closing on December 12, 1997, the Burtons executed the subordination agreement in AmSouth's favor. The subordination agreement provides, in pertinent part, as follows:

> 2. <u>Subordination of Debt</u>. Subject to the provisions of paragraph 5 hereof, Junior Creditor[2] hereby postpones and subordinates all of the loans, advances, indebtedness, liabilities and other obligations of Debtor owing to Junior Creditor (or any of them), whether direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising including, without limitation, the indebtedness, liabilities and obligations owing under the asset purchase agreement...to the full and final payment and discharge of all loans, advances, indebtedness and other obligations of Debtor owing to Senior Creditor....
>
> *        *        *
>
> 4. <u>Negative Covenants</u>. For so long as this Agreement is in effect...Junior Creditor shall not demand, collect, sue for, accelerate the maturity of or accept from Debtor or any other person any payment (other than a payment permitted by paragraph 5 hereof) or any property (including the Collateral) on account of the Junior Debt or any part thereof or realize upon or enforce any lien on or interest in any property (including the Collateral) securing the Junior Debt....

---

[2]The subordination agreement refers to the Burtons as the "Junior Creditor" and the debt owed to them as the "Junior Debt"; AmSouth is referred to as the "Senior Creditor" and the debt owed to it as the "Senior Debt." Hardwood Pallets is referred to as the "Debtor."

5. Permitted Payments. Provided no event of default occurs or exists under any instrument or agreement now or hereafter evidencing or securing the whole or any part of the Senior Debt...and no event exists which with notice or lapse of time would constitute any such event of default, Debtor may pay and Junior Creditor may accept and retain any regularly scheduled payments due and owing to Junior Creditor from Debtor under the Junior Documents in accordance with the payment terms thereof, but without prepayment or payment upon acceleration. From and after the occurrence of any such event of default...or any event which with notice or lapse of time may constitute such an event of default, Debtor shall not make, and Junior Creditor shall not request, demand, accept, collect, or sue for any payment on account of the Junior Debt except to the extent expressly authorized by Senior Creditor.

*       *       *

8. Waivers. Debtor and Junior Creditor each hereby waives any defense based on the adequacy of a remedy at law which might be asserted as a bar to the remedy of specific performance of this Agreement in any action brought therefor by Senior Creditor. To the fullest extent permitted by law, Debtor and Junior Creditor each hereby further waives: presentment, demand, protest, notice of protest, notice of default or dishonor, notice of payment or nonpayment and any and all other notices and demands of any kind in connection with all negotiable instruments evidencing all or any portion of the Senior Debt or the Junior Debt to which Debtor or Junior Creditor may be a party; the right to require Senior Creditor to marshall any property (including, without limitation, any Collateral); the right to require Senior Creditor to enforce any security interest or lien Senior Creditor may now or hereafter have in any property securing the Senior Debt, or to pursue any claim it may have against Junior Creditor, any guarantor of the Senior Debt, or any other person or entity, as a condition to Senior Creditor's entitlement to receive any payment on account of the Junior Debt or exercising any other rights under this Agreement; notice of the acceptance of this Agreement by Senior Creditor; notice of any loans made, extensions granted or other action taken in reliance hereon; and all other demands and notices of every kind in connection with this Agreement, the Senior Debt or the Junior Debt. Junior Creditor assents to any release, renewal, extension, modification, compromise, or postponement of the time of payment of the Senior Debt, to any substitution, exchange or release of Collateral therefor, to the addition

or release of any person primarily or secondarily liable thereon, and to the extension of all Senior Debt whether now or hereafter existing.

\*       \*       \*

14. Default and Enforcement. ...[I]n the event of a breach by either the Debtor or Junior Creditor in the performance of any of the terms of this Agreement or any instrument or agreement evidencing or securing the Senior Debt or the Junior Debt,...all of the Senior Debt shall, at the option of Senior Creditor, become immediately due and payable without presentment, demand, protest, or notice of any kind....   At any time Junior Creditor fails to comply with any provision of this Agreement that is applicable to Junior Creditor, Senior Creditor may demand specific performance of this Agreement,...and may exercise any other remedy available at law or equity. Without limiting the generality of the foregoing, if Junior Creditor, in violation of this Agreement, shall institute or participate in any action, suit or proceeding against Debtor, Debtor may interpose as a defense or dilatory plea this Agreement and Senior Creditor is irrevocably authorized to intervene and to interpose such defense or plea in Debtor's name.  If Junior Creditor attempts to enforce or realize upon any Collateral in violation of this Agreement, Debtor or Senior Creditor...may by virtue of this Agreement restrain such realization or enforcement....

Approximately six months after the closing, Hardwood Pallets defaulted on its payments to the Burtons.  The Burtons subsequently brought this action against Hardwood Pallets, alleging breach of contract and default on the promissory note.[3]

On February 11, 1999, AmSouth conducted a private foreclosure sale and sold the collateral to Hardwood Acquisition, LLC, an entity in which Hardwood Pallets' former shareholders held a minority interest.  The Burtons were not given notice of the sale, and they received no funds from it.  AmSouth lost $60,689.34 on the sale of the collateral not counting interest, attorney's fees, and selling expenses.  Following the sale, the Burtons amended their complaint to add AmSouth as a defendant,[4] alleging that AmSouth (1) procured the breach of the asset purchase agreement and promissory note between the Burtons and Hardwood Pallets and (2) conspired to defraud the Burtons.  AmSouth responded and asserted a counterclaim, alleging that the Burtons breached the subordination agreement by instituting the instant action against it and Hardwood Pallets.

---

[3]The Burtons also sued the shareholders of Hardwood Pallets, Robert McKenzie and Edwin Reeves, alleging procurement of breach of contract, and fraud/negligent misrepresentation.  Those claims are not before us on this appeal.

[4]Hardwood Acquisitions, LLC, which later changed its name to Pallet Resources, LLC, was also added as a defendant; however, that entity is not a party to this appeal.

AmSouth subsequently filed a motion for summary judgment and requested that any further discovery be stayed pending resolution of its motion. Thereafter, the Burtons filed a motion to amend their complaint to allege that the defendants, including AmSouth, had conspired to commit a fraudulent conveyance. The trial court stayed any further discovery and consideration of the Burtons' motion to amend pending resolution of the summary judgment motion. On January 31, 2001, the trial court granted AmSouth summary judgment. The trial court also denied the Burtons' motion to amend, noting that the amendment would be futile in light of its finding "that AmSouth was statutorily and contractually allowed to liquidate the [c]ollateral in the manner in which it did and that the Plaintiffs' fraudulent conveyance claim is simply another attempt by the Plaintiffs to challenge the sale when they have no legal right to do so." This appeal followed.

## II. *Standard of Review*

Our standard of review of a grant of summary judgment is well-settled. Our inquiry involves only a question of law, with no presumption of correctness as to the trial court's decision. ***Robinson v. Omer,*** 952 S.W.2d 423, 426 (Tenn. 1997); ***Byrd v. Hall,*** 847 S.W.2d 208, 210 (Tenn. 1993). The moving party – in this case, AmSouth – has the initial burden of producing competent, material evidence reflecting that there are no genuine issues of material fact and that it is entitled to summary judgment as a matter of law. *See **Byrd,*** 847 S.W.2d at 211. In evaluating the evidence in the summary judgment context, we must view the evidence in the light most favorable to the nonmoving party, and we must draw all reasonable inferences in favor of that party. ***Id.*** at 210. Summary judgment is appropriate only when there are no genuine issues of material fact and when the undisputed material facts entitle the moving party to a judgment as a matter of law. Tenn. R. Civ. P. 56.04; ***Byrd,*** 847 S.W.2d at 211.

## III. *Grant of Summary Judgment to AmSouth*

AmSouth argues that the grant of summary judgment was proper because, in selling the collateral, it acted at all times within its statutory rights as a secured creditor and its contractual rights under the subordination agreement. Furthermore, it argues that the subordination agreement precludes the Burtons from bringing this action. The Burtons, while not disputing AmSouth's status as a secured creditor or the validity of the subordination agreement, insist that the grant of summary judgment to AmSouth was not appropriate because, so the argument goes, (1) AmSouth breached its duty of good faith under the subordination agreement; (2) AmSouth conspired with the other defendants to defraud the Burtons; and (3) AmSouth induced Hardwood Pallets' breach of contract. We will address each of these arguments in turn.

### A. Breach of Duty of Good Faith

Tennessee common law imposes a duty of good faith in the performance of every contract. ***Wallace v. National Bank of Commerce,*** 938 S.W.2d 684, 686 (Tenn. 1996); ***TSC Indus., Inc. v. Tomlin,*** 743 S.W.2d 169, 173 (Tenn. Ct. App. 1987). While acknowledging that AmSouth had the right to sell the collateral following Hardwood Pallets' default, the Burtons argue that AmSouth

nevertheless breached its implied duty of good faith by "concealing" the sale from them and by knowingly using "its superior position to assist Hardwood Pallets in eliminating the debt owed to the Burtons." The Burtons contend that the duty of good faith obligated AmSouth to "at least... notify the Burtons about the proposed sale and permit them to bid on the assets, or it should have refrained from selling the assets to an entity connected with Hardwood Pallets."

We do not agree with the Burtons that AmSouth's failure to give notice of the sale constituted a breach of the duty of good faith implied in the subordination agreement. Upon Hardwood Pallet's default, AmSouth, as a secured creditor, was entitled to dispose of the collateral by public or private sale in order to satisfy the indebtedness owed it, *see* T.C.A. § 47-9-610 (2001), and the Burtons, as unsecured creditors, were not entitled to notice of the sale. *See* T.C.A. § 47-9-611(c) (2001). Moreover, the Burtons expressly waived any right to notice in the subordination agreement. Because AmSouth acted in accordance with its statutory and contractual rights, it cannot be said that its actions were in bad faith. *See, e.g., **Wallace***, 938 S.W.2d at 687.

We also do not agree that AmSouth's sale of the collateral to Hardwood Acquisition, LLC, constituted a breach of the duty of good faith. The subordination agreement did not give the Burtons any more rights in the collateral than they had by statute or common law. As unsecured creditors, they have no interest in the collateral. As such, they were not entitled to notice of the sale, *see **id.***, and they have no standing to challenge the manner in which it was sold. *See* T.C.A. § 47-9-625(c) (2001). Therefore, we find the plaintiffs' argument to be without merit.

### B. Conspiracy to Defraud

The Burtons argue that the defendants had a common purpose to defraud them and that AmSouth "assisted in the parties' plan." They further argue that the subordination agreement does not shield AmSouth from liability for its fraudulent conduct.

The tort of conspiracy to defraud is defined as a "combination between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means." ***Chenault v. Walker,*** 36 S.W.3d 45, 52 (Tenn. 2001) (quoting ***Dale v. Thomas H. Temple Co.,*** 186 Tenn. 69, 90, 208 S.W.2d 344, 353 (1948)). To be liable, "[e]ach conspirator must have the intent to accomplish this common purpose, and each must know of the other's intent." ***Brown v. Birman Managed Care, Inc.,*** 42 S.W.3d 62, 67 (Tenn. 2001).

In opposition to AmSouth's motion for summary judgment, the Burtons submitted the affidavit of Blake Burton and bank records to establish the following facts, which, they assert, establish AmSouth's fraudulent conduct:

> 1. AmSouth was involved in the transaction from the beginning and insisted on certain terms being included in the parties' asset purchase agreement.

2. No one informed the Burtons that their debt would not be collateralized.

3. During the closing, Reeves, a shareholder of Hardwood Pallets, and a bank representative left the closing and unspecified changes were made to the closing documents.

4. After five months, AmSouth instructed Hardwood Pallets not to make any more payments to the Burtons.

5. After Hardwood Pallets' default, AmSouth arranged the private foreclosure sale of the debtors' assets to an entity in which Reeves and McKenzie, another shareholder of Hardwood Pallets, had a 20% ownership interest. Other owners of the company were customers of the Bank, and AmSouth entered into a new loan with the company.

6. Internal bank records state and acknowledge that the private sale would deprive Hardwood Pallets of its ability to pay its unsecured debt to the Burtons. Nevertheless, AmSouth gave them no notice of the sale.

These facts, when viewed in a light most favorable to the Burtons, do not create a genuine issue of material fact as to the Burtons' conspiracy claim against AmSouth. The stated facts do not establish, directly or inferentially, that AmSouth had an intent to defraud the Burtons or that it knew of any fraudulent intent on the part of the other defendants. Most of the Burtons' allegations relate to actions that AmSouth was lawfully entitled to take by virtue of its status as lender and first priority secured creditor. At best, these facts establish that AmSouth knew that by selling Hardwood Pallets' assets to satisfy its secured debt, the Burtons' unsecured debt would go unsatisfied. This, however, does not amount to fraudulent conduct.

By way of a separate issue, the Burtons argue that the trial court erred in not allowing the Burtons to amend their complaint to additionally allege that AmSouth conspired to commit a fraudulent transfer of the collateral. The factual basis of this additional claim is essentially the same as the facts relied upon by the Burtons to support their conspiracy to defraud claim. The trial court found that the proposed amendment would be futile in light of its grant of summary judgment on the conspiracy to defraud claim. We agree that the amendment would be futile. "The futility of an amendment is clear when granting it would prolong the litigation, but almost certainly not lead to a different ultimate result." ***Welch v. Thuan,*** 882 S.W.2d 792, 794 (Tenn. Ct. App. 1994). We therefore affirm the trial court as to this issue.

-7-

C. Inducement of Breach of Contract

Next, the Burtons argue that AmSouth is not entitled to summary judgment as to their claim that AmSouth induced a breach of the contract between the Burtons and Hardwood Pallets. They assert that AmSouth induced a breach of the contract by directing Hardwood Pallets not to make further payments to the Burtons.

The subordination agreement provides AmSouth with the right in the event of a default to demand that Hardwood Pallets make no further payments to the Burtons on the unsecured debt and that the Burtons "shall not request, demand, accept, collect, or sue for any payment" without AmSouth's express consent. Clearly, AmSouth was operating within its rights under the subordination agreement when it directed Hardwood Pallets to terminate its payments to the Burtons. The Burtons contend, however, that even if AmSouth had the contractual right to direct the termination of payments, it did so in bad faith. We disagree. "Performance of a contract according to its terms cannot be characterized as bad faith." **Wallace,** 938 S.W.2d at 687. The trial court properly granted AmSouth summary judgment as to this claim.

IV. *Staying of Discovery*

The Burtons' final issue relates to the trial court's decision to stay discovery pending the resolution of AmSouth's motion for summary judgment. We find no reversible error in the staying of discovery pending that motion. We agree with AmSouth's position that no amount of discovery would have changed the subordination agreement and the other relevant facts implicated by the Burtons' claims, none of which facts are really in dispute. Simply stated, the plaintiffs' theory of recovery is not made out by these undisputed facts; however, these facts do clearly establish AmSouth's right to a judgment in summary fashion. The trial court did not err in staying discovery. *See* **Leatherwood v. United Parcel Serv.,** 708 S.W.2d 396, 402 (Tenn. Ct. App. 1985).

V. *Conclusion*

The judgment of the trial court is affirmed. This case is remanded for collection of costs assessed below, pursuant to applicable law. Costs on appeal are taxed to the appellants, Blake Burton and Michael Burton.

_____
CHARLES D. SUSANO, JR., JUDGE

-8-