IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 1, 2011 Session

# DANIEL CAVANAUGH, et al., v. AVALON GOLF PROPERTIES, LLC.

**Appeal from the Chancery Court for Loudon County**
**No. 10605      Hon. Frank V. Williams, III., Chancellor**

**No. E2010-00046-COA-R3-CV - Filed February 24, 2011**

Plaintiffs purchased a residential lot from defendant developer, but the purchase contract required plaintiffs to use defendant construction company to build their home.  Before the home was completed, defendant construction company defaulted on paying materialmen and suppliers and abandoned the project.  Plaintiffs brought this action alleging that developer knew, or should have know, that the construction company was incapable of performing the required construction services, and that the developer owed plaintiff a fiduciary duty to provide a contractor who could perform the work in a good, workmanlike manner.  They further alleged a breach of contract, in violation of the Tennessee Consumer Protection Act.  A default judgment was entered against the construction company, and the developer filed a Motion for Summary Judgment which the Trial Court ultimately granted against plaintiffs.  Plaintiffs appealed and we affirm the Judgment of the Trial Court.

**Tenn.  R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and JOHN W. MCCLARTY, J., joined.

Gregory H. Harrison, Knoxville, Tennessee, for the appellants, Daniel Cavanaugh and Sharon Cavanaugh.

W. Gerald Tidwell, Jr., Chattanooga, Tennessee, for the appellee, Avalon Golf Properties, LLC.

# OPINION

Plaintiffs initiated this action against Avalon Golf Properties, LLC, and Usonia Homes, Inc., alleging that they had acquired property from Avalon in Loudon County, and they were required by Avalon to use Usonia as the general contractor to build their home on the property. They averred they entered into a construction contract with Usonia, and they obtained a construction loan from First Tennessee Bank. They averred that construction proceeded with Usonia making construction draws directly from the bank, and they discovered that Usonia significantly overdrew the construction loan, and Usonia eventually abandoned the project and they had to hire another contractor to complete the construction.

They averred they had to expend significant funds to complete the house, and alleged that Avalon knew, or should have known, that Usonia was incapable of performing the required construction services, and knew, or should have known, that Usonia was not a licensed general contractor, and had no construction expertise. Plaintiffs alleged that Avalon owed plaintiffs a fiduciary duty to provide a contractor who could perform the work in a good and workmanlike manner, and further alleged breach of contract, misapplication of funds, and violation of the Tennessee Consumer Protection Act.

Avalon answered and stated that when the contract with Usonia was entered into giving them exclusive right to purchase lots in The Legends, a copy of their contractor's license was taken off the internet website for the State of Tennessee, and it had no reason to know that Usonia was not performing properly, and denied that it owed a duty to plaintiffs. Avalon asserted various affirmative defenses, including comparative negligence, and also asserted that the home plaintiffs constructed was valued at or near the actual cost of construction and that plaintiffs received the value of their money invested. Avalon's cross-complaint was against Usonia, seeking indemnity for any judgment against Avalon.

Usonia failed to answer and plaintiffs were awarded a default judgment against Usonia.

Avalon then filed a motion for summary judgment, along with a Statement of Undisputed Material Facts. In it, Avalon stated that it was a residential/golf community in Loudon County, and that plaintiffs expressed interest in buying a lot therein, and reserved a lot with a refundable $5,000 deposit. Avalon stated that plaintiffs entered into a construction contract with Usonia on June 14, 2002, at the Usonia trailer on site at Avalon. Avalon stated that plaintiffs entered into this contract after talking with Danny Spitzer from Usonia and Debbie Elliott, a real estate agent who worked for Heath Shular Realty who was handling the sales in the neighborhood.

Avalon stated that plaintiffs had lived in Florida for 31 years where they had built a house through a development company that was developing a neighborhood and stated that the plaintiffs were experienced in business and real estate transactions. Further, that plaintiff had concerns about Usonia, and had investigated them and found that other contractors had not heard of Usonia. Avalon stated that plaintiffs did not ask for references from anyone associated with Usonia, and never spoke to Scott Krahl or John Walters of Avalon prior to contracting with Usonia.

Avalon stated that Scott Krahl and John Walters were employed by Avalon, and Sherron Burleson and Debbie Elliott were independent real estate agents who contracted with Avalon to sell lots in the neighborhood, and that Burleson ended her business relationship with Avalon to work for Usonia, but at the time of the transaction, was working for neither.

Avalon stated that on November 19, 2001, Avalon contracted with Usonia to give Usonia an exclusive option for purchase of the lots in the neighborhood. Avalon stated that in determining how to enter into this contract with Usonia, Avalon used four criteria: 1) builder had to be a licensed contractor, 2) Avalon interviewed the builder, 3) Avalon reviewed the builder's marketing proposal, and 4) Avalon confirmed that the builder had financing. Avalon stated that two other builders were interviewed and considered for this contract, and that it confirmed with First Tennessee that Usonia was approved for credit and that First Tennessee would lend Usonia the money to build the two spec houses required by the contract, and First Tennessee approved Usonia for construction loans to build the custom homes in the neighborhood.

Avalon stated that Usonia was a licensed general contractor at the time they entered into the purchase agreement with Avalon.

The Trial Court entered an Agreed Order allowing plaintiffs to amend their Complaint to allege that Avalon was negligent in the selection of Usonia as being adequate to construct plaintiffs' home. Avalon filed an Affidavit of John Walters, which set forth evidence corroborating its statement of undisputed material facts.

Plaintiffs filed a Response in opposition to the Motion for Summary Judgment, asserting that there were genuine issues of material fact. Plaintiffs filed a Statement of Additional Facts and Law, to the effect that Ms. Burleson told them they could not use another builder, and told them Usonia was a reputable builder and had been pre-approved for the construction through First Tennessee Bank. Plaintiffs stated that Burleson told them that Usonia would build them a great house, and that they relied on Avalon concerning the builders' credentials. Plaintiffs stated that no one ever told them that Usonia was no longer

-3-

the builder. Plaintiffs perceived that Burleson represented Avalon.

Avalon filed yet a Second Amended Statement of Undisputed Material Facts, and stated that this lawsuit was filed on November 22, 2004, and that in April 2003, plaintiffs received a letter from First Tennessee notifying them that monies taken from their construction loan were not being applied to the construction of their house, and that subcontractors and vendors had not been paid. The letter provided that any future draws would have to be approved in writing, and Usonia would have to provide the bills to subs/suppliers, and that any checks written to Usonia would have to have the supplier's or subcontractor's name on the check as well. Avalon stated that two months after the letter was sent, Joy Bell of First Tennessee called plaintiff and asked her if they had any means of finishing the house beyond the construction loan. Avalon attached excerpts from plaintiffs' deposition.

On July 13, 2009, the Chancellor sent a letter to counsel stating that the Motion for Summary Judgment should be sustained for the following reasons:

1)      Avalon did not negligently misrepresent Usonia's ability to construct plaintiffs' home.

2)      There was no fiduciary duty owed by Avalon to plaintiffs.

3)      The sale of a lot by Avalon to plaintiffs did not involve a deceptive or unfair act and did not violate the Consumer Protection Act.

4)      There was no breach of contract involved in the sale of a lot by Avalon to plaintiffs.

The Court concluded that while some facts were disputed, they were not material. The Court was of the opinion that the factual and legal issues were substantially similar to those raised in the case of *Harrison v. Avalon*, which was resolved by this Court in favor of defendant.

The Trial Court then entered an Order Granting Defendant's Motion for Summary Judgment, wherein the Trial Court stated that the factual and legal issues in this case were controlled by *Harrison v. Avalon*, E2006-00537-COA-R3-CV, and the Trial Court's ruling was in line with the Court's opinion in that case. The Court found that Avalon did not negligently misrepresent Usonia's ability to construct plaintiffs' home, because Avalon had no contact with plaintiffs prior to their contract with Usonia. The court thus dismissed the claim of negligent misrepresentation, and all other claims of negligence. The Court found

that Avalon owed no fiduciary duty to plaintiffs, and could not be found to have breached same.

The Court found that Avalon did not engage in or use a deceptive or unfair practice or act in the sale of the lot to plaintiffs, and also that the statute of limitations had run as to any such claim. The Court found there was no breach of contract by Avalon as to the sale of the lot, since the lot was transferred to plaintiffs according to the contract.

Plaintiffs have appealed and raise these issues:

1.      Whether the Trial Court erred when it granted summary judgment as genuine issues of material fact existed regarding whether or not the plaintiffs were damaged by Avalon's fraudulent concealment?

2.      Whether the Trial Court erred when it granted summary judgment as genuine issues of material fact existed regarding whether or not Avalon was negligent in its selection of the general contractor as the exclusive builder of plaintiffs' home?

3.      Whether the Trial Court erred when it granted summary judgment as genuine issues of material fact existed regarding whether or not Avalon engaged in an unfair or deceptive business practice in violation of the Tennessee Consumer Protection Act?

4.      Whether the Trial Court erred when it granted summary judgment as material facts prove Avalon breached the implied covenant of good faith inherent in its contract with plaintiffs?

Essentially, the issues raised on appeal are questions of law or mixed questions of law and fact which may be resolved within the framework of the undisputed material facts.

Plaintiffs argue the Trial Court erred in granting summary judgment to Avalon because plaintiffs were damaged by Avalon's fraudulent concealment regarding Usonia's financial condition, etc. Plaintiffs did not, however, allege fraudulent concealment in their complaint or their amended complaint, or in any other pleading filed with the Trial Court. It is well-settled that issues not raised at the trial court level cannot be raised for the first time on appeal. *Lawrence v. Stanford*, 655 S.W.2d 927 (Tenn. 1983). Accordingly, this issue cannot be addressed by this Court.

Plaintiffs argue that the Trial Court erred in granting summary judgment on its claim

that Avalon negligently selected Usonia as its "exclusive builder". This issue has been previously dealt with by this Court in the factually similar case of *Harrison v. Avalon Properties, LLC, et al.*, 246 S.W.3d 587 (Tenn. Ct. App. 2007). Harrison involved another set of plaintiffs who sued these same defendants over their home that was being built by Usonia in the Legends, and also alleged that Avalon was negligent in its selection of Usonia as builder. This Court held that, not only did plaintiffs fail to show what duty, if any, Avalon owed to plaintiffs when selecting the builder, but that plaintiffs also failed to show that Avalon's actions fell below the applicable standard of care.

Specifically, this Court stated:

the Trial Court specifically found that George Ricker, Usonia's builder, undoubtedly had the skills and experience to do the job, . . .". The evidence does not preponderate against this finding. Rather, the evidence in the record on appeal shows that George Ricker had been in the construction business since the early 1970's and that Usonia was a licensed general contractor and that either George Ricker or Usonia held licenses including master plumber, heating and air conditioning installation, mechanical contractor, and electrician. . . . The evidence reveals that Plaintiffs had a construction loan sufficient, along with their initial $40,000 payment to Usonia, to cover the construction contract amount on the house as originally contracted for Usonia to build. The fact that Usonia did not have the financial resources to complete its agreement with Avalon Golf to take-down a certain number of lots within a certain time frame has no relevance as to whether Usonia had the financial ability at the time the contract between Plaintiffs and Usonia was executed, given Plaintiffs' construction loan of $220,000 and Plaintiffs' initial $40,000 payment, to construct Plaintiffs' home as originally contracted.

The later agreement made solely between Usonia and Plaintiffs to add extra numerous upgrades to Plaintiffs' house at no charge to Plaintiffs, Usonia's failure to find other sources of capital, and Usonia's mismanagement of funds all occurred after Avalon Golf's selection of Usonia as a builder. As such, these events are not relevant to the analysis of whether Avalon Golf negligently selected Usonia as the builder. Usonia had the skills and ability to do the job, as found by the Trial Court. Further, Plaintiffs presented no relevant proof that Usonia did not have the financial resources, using Plaintiffs' original $40,000 payment to Usonia and Plaintiffs' construction loan, to commence and complete construction of Plaintiffs' house as originally contracted.

Therefore, the evidence presented by Plaintiffs at trial is insufficient to show any conduct by Avalon Golf falling below the applicable standard of care that amounts to a breach of any duty owed to Plaintiffs relating to Avalon Golf's selection of

Usonia as the exclusive builder of The Legends. Given this, the Trial Court erred in holding Avalon Golf negligent in selecting Usonia as the builder, and we reverse the Trial Court's holding that Avalon Golf is liable to Plaintiffs for the negligent selection of Usonia as the builder.

*Id.* at 601-602.

The facts in this case are essentially the same as in the quoted case. *Id.* At the time Avalon selected Usonia as a builder, it had no reason to know that Usonia was going to have the financial problems that it did, or that it would not build plaintiff's house properly. The fact that Usonia had later failed to "take down" a certain number of lots for Avalon or to build a spec home as required by the agreement between Avalon and Usonia did not indicate that Usonia would fail to perform on its construction contract with plaintiffs, when plaintiffs' down payment and construction loan provided the needed funds to build the house. Any issues that Avalon had with Usonia's failure to perform under their agreement obviously occurred after Avalon selected Usonia as the builder, and there is no authority to support plaintiffs' contention that this was a "continuing" duty or selection process simply because Avalon could terminate Usonia at any time. Even if there was, Avalon did not make the decision to terminate Usonia until after plaintiffs had already contracted with Usonia to build their home. Accordingly as found in *Harrison*, this issue is without merit.

Plaintiffs claim that the Trial Court erred in granting summary judgment on their claim that Avalon violated the Tennessee Consumer Protection Act. Plaintiffs claim that Avalon's action in requiring them to use Usonia to build their home when they knew or should have known that Usonia was having financial issues or was not performing as expected was unfair and/or deceptive in violation of the TCPA.

In order to recover under TCPA, the plaintiff must prove: (1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an "ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated. . .." *Tucker v. Sierra Builders*, 180 S.W.3d 109 (Tenn. Ct. App. 2005). The defendant's conduct need not be willful or even knowing, but if it is, the TCPA permits the trial court to award treble damages. *Id.*

This case is factually similar to the *Tucker* case, as in that case the plaintiff was buying a manufactured home from All American, who then required her to use Sierra Builders, its "authorized contractor", to erect that home on her lot. *Id.* Plaintiff alleged that Sierra Builders did a shoddy job erecting her home, and tried to hold All American, the manufacturer, liable under the TCPA for an unfair or deceptive business practices, as she had

-7-

been to All American's facility and had seen well-constructed modular homes, and allegedly was told that her home would be just like those.

The Court found no violation of the TCPA, stating:

All American's decision to make its product available only through authorized contractors does not inherently create a likelihood that consumers will be placed in a position where they will be unable to avoid injury. Requiring that products be installed or erected by authorized distributors does not undermine a consumer's ability to decide whether to purchase an All American modular house. If a consumer, like Ms. Tucker, prefers to have a house constructed by a contractor of her choice, the consumer need only decide not to purchase an All American house and enter into a contract with another contractor.

When Ms. Tucker decided to purchase an All American modular house, she knew that it could only be installed by Sierra Builders, one of All American's authorized distributors. She was initially disinclined to purchase a modular house because she favored more conventional construction using a contractor of her own choice. However, she eventually decided to purchase a modular home because her daughter liked the floor plan and because she satisfied herself that a properly constructed modular home would fit her needs and her budget. All American's use of authorized distributors did not impair her ability to decide whether or not to purchase a modular house manufactured by All American, to purchase another manufacturer's modular house, or to purchase a conventionally constructed house built by a contractor of her choice. Accordingly, this record provides no factual support for concluding that All American's decision to market its modular houses through authorized distributors was an unfair act or practice proscribed by Tenn.Code Ann. § 47-18-104(a).

The trial court also determined that the conduct and statements of All American's employees to Ms. Tucker were unfair and deceptive. The court found specifically that All American violated Tenn.Code Ann. § 47-18-104(b)(2), (3), and (12). We have determined that the record contains no evidence to support a conclusion that All American has committed any of these specific unfair or deceptive acts or practices.

Tenn.Code Ann. § 47-18-104(b)(2) states that "[c]ausing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services" is an unfair or deceptive act or practice. The record contains no evidence of any act or statement by an All American employee that could have confused Ms. Tucker about the source of the modular house she purchased. It is beyond reasonable dispute that she knew that she was purchasing a modular house manufactured by All

-8-

American and that she also knew that she had contracted with Sierra Builders to complete the interior of the home and to perform additional work that All American had not contracted to provide.

Tenn.Code Ann. § 47-18-104(b)(3) states that "[c]ausing likelihood of confusion or misunderstanding as to affiliation, connection or association with, or certification by, another" is an unfair or deceptive act or practice. Again, the record contains no evidence that any act or statement by All American misled Ms. Tucker about the relationship between All American and Sierra Builders. The All American employees provided truthful and accurate information to Ms. Tucker when they told her that Sierra Builders was one of its authorized contractors and that she could only purchase an All American modular house through Sierra Builders.

The record contains no evidence of any representations by All American employees regarding the quality of Sierra Builders' work. Simply identifying Sierra Builders as an authorized contractor is not tantamount to a warranty regarding the quality of Sierra Builders' work. As far as this record shows, the completed modular houses that Ms. Tucker inspected at All American's factory had not been constructed by Sierra Builders, and there is no evidence that any All American employee represented to Ms. Tucker that the quality of Sierra Builders' work would equal the quality of the construction she observed in the model houses. Providing Ms. Tucker with an opportunity to tour completed houses was simply intended to enable her to compare All American's modular houses with more conventionally built houses.

\* \* \*

All American's signs, brochures, and tours represented that Sierra Builders was one of its authorized contractors. These representations were true. Sierra Builders was at all relevant times an authorized All American homes contractor. However, it is not reasonable to conclude that by designating Sierra Builders as an authorized contractor, All American also warranted the quality of Sierra Builders' work or agreed to be responsible for Sierra Builders' performance of its contract with its customers. Accordingly, we find that All American's truthful representations did not mislead Ms. Tucker into believing that her contract with Sierra Builders conferred rights or remedies on her that it actually did not.

*Id.* at 118-120.

In this case, there has been no showing of an unfair or deceptive act or practice by Avalon.  Avalon did choose Usonia as its "exclusive builder" in the Legends, but plaintiffs

admittedly knew that they could cancel their reservation agreement and receive a refund of their deposit if they did not want to have Usonia build their home. They were not forced to buy this lot nor to contract with Usonia to build them a house. Avalon's decision to name an "exclusive builder" in the Legends was not an unfair or deceptive act in and of itself. Avalon did not warrant Usonia's work nor make any representations to plaintiffs regarding the same, and it was undisputed that plaintiffs had not even spoken to any representatives of Avalon before entering into the construction contract with Usonia.[1]

Plaintiffs argue that it was unfair/deceptive practice for Avalon to enter into a contract with plaintiffs for sale of the lot, knowing that they would be required to use Usonia as their builder, when Avalon knew or should have known that Usonia was having financial difficulty, or that Usonia was not living up to Avalon's expectations. Avalon was not warranting the work to be done by Usonia, and plaintiffs were free to choose whether or not to buy the lot and build there, knowing that they would have to use Usonia as their builder. Plaintiffs were able to investigate Usonia and make up their own mind about whether to enter into this transaction. The record establishes that plaintiffs did investigate and learned that other builders in the area knew nothing about Usonia. Plaintiffs met with a representative from Usonia and expressed in their deposition that they had reservations about contracting with Usonia because the representative was unprepared for their meeting and had no house plans to show them. However, plaintiffs decided to contract with Usonia because they really wanted to build in the Legends and "really loved the lot". Plaintiffs will not be heard to complain of being treated unfairly when they were free to make the decision about whether Usonia was a good choice to build their house. Plaintiffs have failed to show any unfair/deceptive act by Avalon under these circumstances.

Moreover, the Trial Court found, plaintiffs' claims regarding the TCPA would be barred by the one-year statute of limitations, as plaintiffs admitted that they developed serious concerns about Usonia when they received a letter from First Tennessee Bank in April 2003, telling them that Usonia had overdrawn the construction loan, and that Usonia was not paying its suppliers/subcontractors. Accordingly, plaintiffs had knowledge of Usonia's alleged misapplication of funds in April 2003, and did not file their Complaint until November 2004. We hold this issue is without merit.

Finally, plaintiffs argue Avalon breached the implied covenant of good faith and fair dealing that is inherent in every contract. While Avalon did allege a breach of contract in its complaint, it did not specifically raise this issue at the trial level.

---

[1] Assuming *arguendo* Sherron Burleson, the realtor, was deemed to be an agent of Avalon, we have previously ruled that her statements to the effect that Usonia was a good builder would only constitute sales talk or "puffing". *See Harrison.*

As our Supreme Court has stated, "[i]t is true that there is implied in every contract a duty of good faith and fair dealing in its performance and enforcement, and a person is presumed to know the law. See Restatement (2d) Contracts, § 205 (1979). What this duty consists of, however, depends upon the individual contract in each case. In construing contracts, courts look to the language of the instrument and to the intention of the parties, and impose a construction which is fair and reasonable." *Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684 (Tenn. 1996).

In this case, the contract at issue is for the purchase of a lot, and there is no dispute that the lot was paid for and delivered, and that both parties performed their part of the contract. Plaintiffs argue that Avalon breached the duty of good faith, however, by requiring in the contract that plaintiffs use Usonia to build a house on the property. The Restatement, relying on Section 1-201 of the Uniform Commercial Code, defines good faith as "honesty in fact in the conduct or transaction concerned." *See* Restatement (2d) Contracts, § 205. As we previously observed, there was nothing dishonest or deceptive about Avalon choosing Usonia as its exclusive builder. After examining this contract, plaintiffs reasonably expected to receive the lot they contracted and paid for, and Avalon reasonably expected plaintiffs, if they chose to build a home there, to use the builder that Avalon had selected for purposes of uniformity.

The Restatement explains that good faith "excludes a variety of types of conduct characterized as involving 'bad faith' because they violate community standards of decency, fairness or reasonableness." *Id*. Plaintiffs' sole allegation that the claim shows lack of good faith is that Avalon contracted with them to sell the lot and required them to use Usonia as builder at a time when Avalon knew or should have known that Usonia was not performing under its contract with Avalon. However, Avalon did not know or have reason to know that this meant that Usonia would not perform under its contract with plaintiffs. The mere act of using an exclusive builder for uniformity is not, in and of itself, unfair. There is nothing in this record to establish that plaintiffs' transaction with Avalon would violate community standards of decency, fairness or reasonableness.

Based on the foregoing, we affirm the Trial Court's Judgment and remand, with the cost of the appeal assessed to plaintiffs, Daniel and Sharon Cavanaugh.

_____
HERSCHEL PICKENS FRANKS, P.J.

-11-