# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 17, 2014 Session

## MICHAEL L. SCHWARTZ, ET AL. V. DIAGNOSTIX NETWORK ALLIANCE, LLC, ET AL.

**Direct Appeal from the Circuit Court for Davidson County**
**No. 10-C-1821      Carol Soloman, Judge**

---

**No. M2014-00006-COA-R3-CV - Filed November 17, 2014**

---

This case involves an agreement between a distributor of medical tests and a healthcare consultant. The agreement provided that the consultant would earn a commission on sales of the medical test that he solicited on behalf of the distributor. After several months, the distributor terminated the agreement. The consultant filed a lawsuit against the distributor. The consultant alleged that the distributor breached its duty of good faith under the contract by terminating the agreement in order to avoid paying commissions and by failing to provide an adequate sales force to assist the consultant in making sales. The consultant alleged that the distributor breached a separate verbal contract for the development of marketing materials. The consultant also alleged that the distributor fraudulently misrepresented its intent to compensate the consultant for his efforts in soliciting orders for the medical test. The trial court dismissed the consultant's fraud claim and granted summary judgment to the distributor on each of the remaining claims. We affirm the judgment of the trial court with respect to the consultant's breach of good faith and fraud and misrepresentation claims. However, we find that the trial court erred in granting summary judgment on the consultant's claim that the distributor breached a separate verbal contract. We also vacate and remand the trial court's award of attorney's fees for reconsideration after issues related to the verbal contract are resolved.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in part, Reversed in part, Vacated in part and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and JOHN W. MCCLARTY, J., joined.

Martin Douglas Holmes, Nashville, Tennessee, for the appellants, Michael L. Schwartz and M.L. Schwartz & Associates, Inc.

Kevin Clayton Baltz and David L. Johnson, Nashville, Tennessee, for the appellees, Diagnostix Network Alliance, LLC, and Clyde Spencer.

## OPINION

### I. BACKGROUND AND PROCEDURAL HISTORY

Diatherix Laboratories, Inc. ("Diatherix") is a clinical laboratory headquartered in Huntsville, Alabama that provides laboratory testing for the early detection of infectious diseases through a medical test called Tem-PCR.[1] In March 2008, Diatherix granted Defendant/Appellee Diagnostix Network Alliance, LLC ("Diagnostix") the exclusive right to distribute Tem-PCR in the United States. Plaintiff/Appellant Michael L. Schwartz has worked as a healthcare consultant since 1977. Schwartz is president of M.L. Schwartz & Associates, Inc. Unless otherwise distinguished, we refer to M.L. Schwartz & Associates, Inc. and Michael L. Schwartz collectively as "Schwartz" in this opinion.

Schwartz first met with Diagnostix CEO Clyde Spencer to discuss assisting Diagnostix in the marketing and sale of Tem-PCR in September 2008. Shortly thereafter, Schwartz began contacting medical facilities in order to sell Tem-PCR. On November 28, 2008, Diagnostix entered into a written "REPRESENTATIVE AGREEMENT" with "Michael L. Schwartz dba M.L. Schwartz & Associates." The agreement provided that Schwartz would solicit orders for Tem-PCR from potential customers within an assigned territory. In return, Diagnostix would pay Schwartz a commission of two percent of all invoices for Tem-PCR within his territory. Of particular relevance to this case, Section 6 of the agreement, titled "Term and Termination of Agreement" provided:

b. The term of this Agreement (the "Term") shall commence upon the date last set forth below, and shall terminate immediately upon notice of termination by DNA or Representative. Notice of termination shall be sent via mail, fax, email or any other form which provides an acknowledgment of receipt.

c. DNA agrees that when Representative has made or exceeded his or her Quota for the Territory in the preceding fiscal year, and has sales in the current fiscal year which are consistent with his or her achievement of Quota for that time period, DNA may only terminate Representative for good cause. In all other situations, the parties agree that DNA shall

---

[1]Tem-PCR is an acronym for Target Enriched Multiplex Polymerase Chain Reaction.

have the right to terminate this Agreement with or without cause with advanced notice.

\* \* \* \*

h.    Upon the termination of this Agreement, Representative shall cease acting as a sales representative for the Product and or Services in the Territory or elsewhere and agrees not to commence any action or proceeding claiming that Representative still has rights under this Agreement or otherwise. Representative waives any claim against DNA for loss or damage of any kind (including, without limitation, damages or other compensation for unjust enrichment, loss of prospective profits, reimbursements for investments or expenditures made or goodwill) arising from the expiration or termination of this Agreement. Representative acknowledges and agrees that any amounts spent by Representative in the performance of this Agreement, including, without limitation, establishment or maintenance of sales personnel, equipment or facilities, advertising or promotion costs, and travel and living costs and expenses, shall be spent and incurred with the knowledge that this Agreement may be terminated as provided in this Agreement, and thus Representative shall make no claim against DNA or DNA's contracted partners for, and DNA shall not be liable with respect to, investments and expenditures incurred by Representative in anticipation of the continuance of this Agreement.

\* \* \* \*

j.    This Agreement may be terminated at any time by DNA immediately upon prior notice to Representative if Representative shall be acquired by or merged with a non-affiliated third party or if ownership or control of Representative shall change by any other means. DNA reserves the right to terminate this agreement upon (30) days notice to the Representative in the event DNA or any of DNA's contracted partners shall be acquired by or merged with a non-affiliated third party or if ownership or control of DNA or any of DNA's contracted partners shall change by any other means. On termination of this Agreement, the Representative shall have no further interest in outstanding quotes, prospective orders, unfinished sales or orders not filled prior to termination.

From October 2008 to May 2009, Schwartz traveled extensively and made numerous contacts on behalf of Diagnostix and Diatherix. During that time, Schwartz and other Tem-PCR representatives made presentations and marketing pitches to VHA Southeast, Inc. ("VHASE"), an organization that provides products and services to a network of hospitals throughout the southeast. On May 1, 2009, Diatherix entered into a contract with VHASE that provided a means for VHASE member hospitals to purchase Diatherix's services though the contract did not require them to do so. Meanwhile, Diatherix had apparently received complaints from VHASE representatives about Schwartz's aggressive sales tactics. On May 18, 2009, Diagnostix CEO Dennis Grimaud sent an email to Spencer stating that Schwartz's behavior had "created a negative environment" for Diagnostix and Diatherix in providing services to VHASE and requesting that Schwartz no longer represent Diatherix effective immediately. Later that day, Spencer notified Schwartz that Diagnostix was terminating its business relationship with Schwartz in accordance with Section 6.b. The parties do not dispute that Schwartz's efforts did not lead to any sales of Tem-PCR prior to termination of the agreement.

On May 18, 2010, Schwartz filed a complaint in the Davidson County Circuit Court, naming Diagnostix and Spencer as defendants.[2] Schwartz alleged that Spencer conspired with Grimaud to create Diagnostix in order to insulate Diatherix from the claims of independent representatives who marketed and solicited sales for Tem-PCR. Schwartz alleged that Diagnostix terminated the agreement in bad faith in order to reap the benefits of Schwartz's work while depriving him of commissions on future Tem-PCR sales. Schwartz alleged that, in terminating the agreement, Diagnostix breached both the express terms of the agreement as well as its implied obligation to perform in good faith. Schwartz also asserted a claim of fraud and misrepresentation against the defendants.[3] Schwartz alleged that Spencer was vicariously liable for the actions of Diagnostix and requested an award of actual and punitive damages to be determined by a jury.

The defendants responded by filing a motion to dismiss for failure to state a claim, which the trial court granted in part after a hearing. The court found that because the clear language of the agreement permitted Diagnostix to terminate the agreement at any time, Schwartz could not maintain a cause of action based on its express terms. Though the court dismissed Schwartz's breach of contract claim based on the express terms, it found that

[2]The complaint also named Diatherix and Grimaud as defendants, citing theories of vicarious liability. However, because the claims against Diatherix and Grimaud are not relevant to this appeal, we will not discuss them.

[3]The complaint also alleged unjust enrichment by the defendant. However that claim was subsequently dismissed as to all of the defendants and is not relevant to this appeal.

Schwartz sufficiently alleged breach based on Diagnostix's obligation to exercise good faith in terminating the contract. Accordingly, the court found that the good faith claim survived a motion to dismiss as to both Diagnostix and Spencer.[4] Finally, the court dismissed Schwartz's fraud and misrepresentation claim, finding that it failed to meet the specificity requirements of Tennessee Rules of Civil Procedure 9.02.

On July 27, 2011, the defendants filed a motion for summary judgment contending they were entitled to judgment as a matter of law because the undisputed facts established that Diagnostix terminated the agreement in good faith. Specifically, they presented evidence to show that potential Tem-PCR customers complained about Schwartz's sales tactics on numerous occasions. The defendants also asserted that because Schwartz's efforts did not result in any Tem-PCR sales, Diagnostix had no motivation to terminate Schwartz to avoid paying him commissions. As further proof of good faith, the defendants pointed out that although it was not required to do so under the agreement, Diagnostix offered to pay Schwartz a commission on sales made within ninety days of his termination if Schwartz would help facilitate a smooth transition with existing contacts. Finally, the defendants argued that the court should dismiss Schwartz's corporate veil-piercing claims against Spencer in his individual capacity because undisputed facts established that Diagnostix followed appropriate corporate formalities.

Schwartz filed a response to the defendants' motion, arguing that disputed material facts precluded summary judgment and presenting two new theories of recovery developed during the discovery period. Schwartz reiterated his original theory that Diagnostix breached a duty of good faith in terminating the agreement to avoid paying commissions but added that Diagnostix also breached a duty of good faith because it failed to provide an adequate sales force to follow up on leads Schwartz generated. Schwartz also alleged that Diagnostix breached a separate verbal contract that Schwartz entered with Spencer, acting on behalf of Diagnostix, to develop marketing materials in exchange for a payment of $20,000.

The parties filed lengthy briefs articulating their respective positions. The court heard arguments on the motions for summary judgment and filed a memorandum opinion and order on November 15, 2012. The court declined to grant summary judgment to Diagnostix on Schwartz's claim that it terminated the agreement in bad faith, stating that it was "unable at this time to conclude that the evidence is undisputed and that DNA is entitled to judgment as a matter of law." The court also denied summary judgment to the defendants on Schwartz's theory of imputing liability through piercing the corporate veil. The court

---

[4]The court found that Schwartz's complaint was sufficient to support two theories of vicarious liability against Spencer: (1) through an agency relationship between Diagnostix (principal) and Spencer (agent); and (2) through piercing the corporate veil of Diagnostix to impute liability to Spencer.

-5-

declined, however, to rule on the two additional theories of liability Schwartz alleged for the first time in response to summary judgment. Instead, the court instructed Schwartz to file an amended complaint alleging facts to support the new theories and granted the defendants leave to file a renewed motion for summary judgment on the amended complaint.

Pursuant to the court's instructions, Schwartz filed an amended complaint on November 29, 2012 alleging three theories of breach against the defendants: (1) breach of good faith in terminating the agreement to avoid paying commissions; (2) breach of good faith in failing to provide adequate sales support; and (3) breach of a verbal contract for payment for the development of marketing materials. The defendants answered, denying liability under each of the theories and filing a counterclaim for fees and costs incurred in the litigation pursuant to the agreement's attorney's fees clause.

On October 4, 2013, the defendants filed a motion for partial summary judgment directly challenging only Schwartz's "new" claims.[5] The defendants argued they were entitled to judgment on Schwartz's sales support claim because the parties' agreement did not impose any obligation on Diagnostix–express or implied–to provide any level of sales support to follow up on any leads generated by Schwartz. The defendants asserted that reading such an obligation into the contract would create new contractual duties not contemplated by the parties when they executed the agreement. The defendants also argued that Schwartz's claim for breach of a verbal contract to develop marketing materials was barred by the parol evidence rule, relying on Section 8.a. of the agreement, which states that "[r]epresentative expressly waives any claim against DNA for damages or compensation with respect to the development of 'goodwill' or marketing development with respect to the Product or Services on behalf of DNA." Schwartz filed a lengthy response to the motion, and the defendants filed a reply to that response.

On November 15, 2013, the trial court conducted a hearing on the defendants' pending motion. Initially, the court granted summary judgment to the defendants on Schwartz's sales support and verbal contract claims. After dismissing both claims that were the subject of the pending motion, the court also revisited and reversed its earlier denial of summary judgment on Schwartz's original claim that Diagnostix terminated the agreement in bad faith.

Following the court's dismissal of all of Schwartz's claims, Diagnostix filed a motion requesting an award of reasonable attorneys' fees and discretionary costs based on a clause in the agreement providing for such an award to the "prevailing party" in litigation arising

---

[5]The motion did not request that the court revisit its earlier denial of summary judgment on Schwartz's original claim that Diagnostix terminated the agreement in bad faith.

from the contract.[6]  Schwartz conceded that Diagnostix was entitled to such an award as the prevailing party but argued that the judgment should only be entered against M.L. Schwartz & Associates, Inc., and not against Michael Schwartz individually because as he was not a party to the agreement in his individual capacity.  The court rejected Schwartz's argument and entered a judgment of $179,162.34 against both M.L. Schwartz & Associates, Inc., and Michael L. Schwartz, jointly and severally.  Schwartz appealed.

## II.  DISCUSSION

The parties raise multiple issues on appeal.  First, Schwartz contends that the trial court erred in revisiting and reversing its initial denial of summary judgment on the breach of good faith in termination claim.  Second, Schwartz contends that, in any event, the court erred in granting summary judgment to the defendants on each of his three breach of contract claims.  Third, Schwartz contends that the trial court erred in dismissing the claim for fraud and misrepresentation.  Finally, Schwartz contends that the trial court erred in determining that he should be held liable in his individual capacity for the award of attorney's fees and costs to Diagnostix.  Finally, both Schwartz and Diagnostix take issue with the amount of the trial court's award for attorney's fees and costs.

## A.  BREACH OF CONTRACT

Schwartz contends that the trial court erred in granting summary judgment on each of the breach of contract claims.  Although Schwartz concedes that Diagnostix did not breach any express terms of the parties' written agreement, Schwartz contends that Diagnostix breached its implied obligation to perform the contract in good faith in two ways: (1) by terminating the agreement in bad faith to prevent Schwartz from receiving commissions on future sales that were the result of his efforts, and (2) by failing to provide adequate sales support to generate sales from the contacts Schwartz made on behalf of Diagnostix. Schwartz also contends that he and Spencer reached a verbal agreement for Schwartz to develop marketing materials explaining the financial benefits of Tem-PCR in exchange for $20,000. Schwartz contends that Diagnostix breached the contract because he performed the work but was never paid.  We address each of Schwartz's breach of contract claims separately.

### *Good Faith in Termination of the Agreement*

---

[6]Section 8.b.iv. of the agreement, which addresses litigation between the parties, states that "[t]he prevailing party shall be entitled to an award of all reasonable attorneys fees and expenses incurred by it in connection with such lawsuit . . . ."

Schwartz maintains that the trial court erred in revisiting and reversing its initial denial of summary judgment to Diagnostix on the claim that Diagnostix terminated the agreement in bad faith. To begin, we address whether Judge Soloman erred in revisiting the issue after the defendants' motion for summary judgment on the issue was initially denied by Judge McClendon.[7] Schwartz contends that the trial court erred by *sua sponte* reversing its prior order without a motion for summary judgment pending before it.

We find that the trial court had the discretion to revisit and reverse its prior order pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure and Rule 3(a) of the Tennessee Rules of Appellate Procedure. Those rules provide that in cases involving multiple parties or claims for relief, any order adjudicating fewer than of all the claims or the rights and liabilities of fewer than of all the parties is subject to revision at any time before entry of a final judgment. Tenn. R. Civ. P. 54.02; Tenn. R. App. P. 3(a). Judge McClendon's order denying the motion for summary judgment was not a final judgment. *See, e.g.*, *Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 460 (Tenn. 1995) ("An order denying a motion for summary judgment, for example, is not a final judgment because the entire suit remains for disposition."). Accordingly, the order was subject to revision at any time before entry of a final judgment. This conclusion is supported by other cases in which this Court has upheld the authority of trial courts to revisit and reverse its prior order denying summary judgment under similar circumstances. *See Shelburne v. Frontier Health*, No. E2000-02551-COA-R3-CV, 2001 WL 1328531, at *7 (Tenn. Ct. App. Oct. 29, 2001) (holding that the trial court did not err in granting defendant's third motion for summary judgment after its earlier motions were denied by a different judge), *rev'd on other grounds*, 126 S.W.3d 838 (Tenn. 2003); *Con Pac South, Inc. v. Burnett*, No. 03A01-9811-CV-00389, 1999 WL 419708, at *2 (Tenn. Ct. App. June 24, 1999) (holding that the trial court did not err in revisiting another judge's earlier denial of summary judgment even though no new motion had been filed and no new facts or legal issues had arisen).[8] Therefore, we find no error in the trial court's decision to revisit its prior ruling on summary judgment. Plaintiffs make no allegation in this Court that the trial court considered new facts or new legal issues beyond those raised in the pleadings relating to the earlier motion for summary judgment.

Schwartz contends that even if the trial court had the discretion to revisit its earlier

---

[7]When the case was initially filed in May 2010, it was assigned to Judge Amanda McClendon of the Second Circuit Court of Davidson County. Judge McClendon ruled on the defendants' first motion for summary judgment. Between the defendants' first and second motions for summary judgment, the case was transferred to Judge Carol Soloman.

[8]*See also Gurley v. King*, 183 S.W.3d 30, 33 (Tenn. Ct. App. 2005) (reversing the trial court's grant of summary judgment on the merits rather than the trial court's *sua sponte* decision to revisit its previous denial of summary judgment).

summary judgment ruling, the court erred in reversing the ruling and granting summary judgment to Diagnostix. Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. Schwartz argues that Diagnostix is not entitled to a judgment as a matter of law because the question of whether Diagnostix terminated the agreement in bad faith presents a genuine issue of material fact for a jury. However, a disputed fact is only material if it must be decided in order to resolve the substantive claim at which the motion is directed. *Byrd v. Hall*, 847 S.W.3d 208, 215 (Tenn. 1993). After reviewing the specific terms of the contract at issue, we conclude that the factual question of whether Diagnostix terminated the agreement in bad faith is not material because it was entitled to terminate the agreement for any reason.

It is well-established in Tennessee that the common law imposes a duty of good faith in the performance of contracts. *Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 660 (Tenn. 2013) (citing *Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 686 (Tenn. 1996)). Thus, when a contractual provision is silent regarding the standard of conduct governing a party's performance, the party must perform in good faith and in a commercially reasonable manner. *Id.* at 669. However, parties are free to contract for a standard of conduct in performance that is different than the standard of good faith imposed by common law. *Id.* at 669; *Bank of Crockett v. Cullipher*, 752 S.W.2d 84, 91 (Tenn. App. 1988) ("[Parties] may by agreement, however, determine the standards by which the performance of obligations are to be measured."). To determine whether the parties have contracted for a different standard of conduct, the court must examine the specific language of the contract at issue. *Wallace*, 938 S.W.2d at 686; *Barnes & Robinson Co., Inc. v. OneSource Facility Servs., Inc.*, 195 S.W.3d 637, 643 (Tenn. Ct. App. 2006).

In examining and interpreting contracts, we are guided by the well-settled principles of contract construction. "A cardinal rule of contractual interpretation is to ascertain and give effect to the intent of the parties." *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006) (citation omitted). We can ascertain the intent of the parties from the ordinary meaning on the language used in the body of the contract. *84 Lumber Co. v. Smith*, 356 S.W.3d 380, 383 (Tenn. 2011). If the language of the contract is clear and unambiguous, the literal meaning of the contract language controls. *Allmand v. Pavletic*, 292 S.W.3d 618, 630 (Tenn. 2009).

In this case, the parties' agreement was made for an indefinite term. Nothing in the agreement suggests that Schwartz's right to terminate the agreement was restricted in any way. Additionally, neither party disputes that because Schwartz had not made any Tem-PCR sales prior to the termination, Diagnostix was entitled to terminate the agreement at any time

"with or without cause." Accordingly, the clear and unambiguous language of the agreement indicates that the parties' relationship, under the circumstances, was analogous to a contract for employment at will. *See Guy v. Mutual of Omaha Ins. Co.*, 79 S.W.3d 528, 534-35 (Tenn. 2002) ("Tennessee has long adhered to the common law employment-at-will doctrine, which provides that an employment contract for an indefinite term is terminable at the will of either the employer or the employee for any cause or for no cause."). Tennessee courts have consistently held that a contract for employment at will may be terminated without breach for good cause, bad cause, or no cause at all. *Forrester v. Stockstill*, 869 S.W.2d 328, 330 (Tenn. 1994); *Clanton v. Cain-Sloan Co.*, 667 S.W.2d 441, 443 (Tenn. 1984). The clear terms of the contract provide that Diagnostix may terminate the contract "without cause." To hold that the covenant of good faith prevented Diagnostix from exercising its right to terminate the contract for any reason would be contrary to the parties' clear intention, as evidenced by the agreement.

We recognize that Schwartz's termination after working to secure sales of Tem-PCR, but before any commissions from its sale became formally due, may be perceived as harsh. However, an unfortunate business outcome does not invalidate the parties' contractual structure. Pursuant to Section 6.h of the agreement, Schwartz explicitly entered the agreement with full knowledge of how the agreement could be terminated and, with that knowledge, waived any claims against Diagnostix for expenses he incurred in his performance. Schwartz also acknowledged under Section 6.j. of the agreement that on termination of the agreement, he would have no interest in future sales. We must respect the right of competent parties in a commercial transaction to construct their own bargains. *See Dick Broad. Co.*, 395 S.W.3d at 672-673 (Koch, J., concurring). Diagnostix's performance according to the terms of the parties' agreement cannot be characterized as bad faith. *See Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 687 (Tenn. 1996). In light of the foregoing, we affirm the trial court's grant of summary judgment to the defendants on Schwartz's claim that Diagnostix breached a duty of good faith in terminating the parties' agreement.

### *Good Faith in Providing Sales Support*

The trial court also granted summary judgment to the defendants on Schwartz's claim that Diagnostix breached the parties' agreement because it failed to provide adequate sales support to follow up and pursue leads Schwartz created. The court found that Diagnostix did not have any express or implied duty under the agreement to provide any particular level of sales support. On appeal, Schwartz does not contend that any language in the agreement imposes an express obligation on Diagnostix to provide adequate sales support; rather, Schwartz argues that the trial court erred in granting the defendants' summary judgment motion because Diagnostix had an implied duty of good faith to provide such support and

whether it did so is a genuine issue of material fact.

As we previously stated, Tennessee courts recognize that there is implied duty of good faith and fair dealing in every contract. *Dick Broad.*, 395 S.W.3d at 660. However, the implied duty of good faith should not be interpreted so broadly as to create new contractual rights or obligations for the parties. *Id.* at 666. Schwartz has failed to identify any provision in the parties' agreement from which it can be inferred that Diagnostix was obligated to provide any level of sales support to follow up on Schwartz's contacts. The plain language of the contract simply provided that Schwartz would "solicit orders" for Tem-PCR based on the terms and conditions provided by Diagnostix and that the orders would become binding after acceptance by Diagnostix. We decline to recognize and enforce an implied obligation that has no foundation in the parties' unambiguous written agreement.

Moreover, we note that in this case Schwartz had an opportunity to review the agreement prior to signing it and, in fact, initially rejected it. In his deposition, Schwartz stated that when Spencer first sent him a copy of the proposed agreement, he insisted that it be redrafted to provide him further protection and to more clearly define his role as a consultant rather than a salesperson. Nevertheless, after Spencer indicated that its terms were not negotiable, Schwartz voluntarily signed the agreement. It is not the duty of the courts to come to the aid of parties who enter undesirable commercial transactions. *Ellis v. Pauline S. Sprouse Residuary Trust*, 280 S.W.3d 806, 814 (Tenn. 2009) ("[T]he courts do not concern themselves with the wisdom or folly of a contract and will not relieve a party of its contractual obligations simply because the contract later proves to be burdensome or unwise."); *see also Dick Broad. Co.*, 395 S.W.3d at 672–676 (Koch, J., concurring) (explaining the limited scope of the implied duty of good faith and fair dealing in the context of arm's length commercial transactions).

In sum, the alleged failure of Diagnostix to provide adequate sales support to Schwartz does not amount to a breach of the parties' agreement or of the implied duty of good faith. The unambiguous language of the agreement did not impose any obligation on Diagnostix to provide any level of sales support. We affirm the trial court's grant of summary judgment to the defendants on Schwartz's claim that Diagnostix breached a duty of good faith by failing to provide adequate sales support.

### *Breach of a Verbal Contract*

In addition to claims related to the parties' written contract, Schwartz alleged in the first amended complaint that Diagnostix breached a verbal contract Schwartz entered with Spencer, acting on behalf of Diagnostix, to develop marketing materials demonstrating the potential cost savings and financial benefits of Tem-PCR. Schwartz alleged that because

both parties agreed that the development of marketing materials was outside the scope of his duties under the written agreement, Spencer agreed to pay Schwartz separately for the work. Schwartz claims he developed the materials in reliance on Spencer's promise but that he was never compensated for his work.

As outlined above, a party moving for summary judgment under the standard set forth in *Hannan* may shift the burden to the nonmoving party either by negating an essential element of the nonmoving party's claim or by demonstrating that the nonmoving party cannot establish an essential element of the claim at trial. *Hannan v. Alltel Pub'l Co.*, 270 S.W.3d 1, 6 (Tenn. 2008). The trial court found that Diagnostix demonstrated that Schwartz would be unable to prove the existence of the verbal contract at trial. The court determined that evidence of the alleged verbal agreement would be inadmissible under the parol evidence rule because it was inconsistent with Section 8.a. of the agreement, which states that "[r]epresentative expressly waives any claim against DNA for damages or compensation with respect to the development of 'goodwill' or *marketing development* with respect to the Product and or Services on behalf of DNA." (Emphasis added.) After examining the record, however, we find that, because it is not clear from the record when the alleged verbal contract was created, the trial court improperly applied the parol evidence rule to determine that it would prevent Schwartz from presenting evidence of the alleged verbal contract at trial.

This Court discussed the parol evidence rule in *GRW Enterprises, Inc. v. Davis*:

The parol evidence rule is a rule of substantive law intended to protect the integrity of written contracts. Since courts should not look beyond a written contract when its terms are clear, the parol evidence rule provides that contracting parties cannot use extraneous evidence to alter, vary, or qualify the plain meaning of an unambiguous written contract.

The rule appears to be quite all-encompassing. However, the courts have been reluctant to apply it mechanically and have now recognized that it has numerous exceptions and limitations. Thus, *the rule does not prevent using extraneous evidence to prove the existence of an agreement made after an earlier written agreement*, or to prove the existence of an independent or collateral agreement not in conflict with a written contract. In each of these circumstances, the courts have conceived that the parol evidence is not being used to vary the written contract but rather to prove the existence of another, separate contract.

-12-

*GRW Enters., Inc. v. Davis*, 797 S.W.2d 606, 610–11 (Tenn. Ct. App. 1990) (emphasis added) (citations omitted).  Accordingly, although a written contract must prevail over prior and contemporaneous representations, *Lyons v. Farmers Inc. Exch.*, 26 S.W.3d 888 (Tenn. Ct. App. 2000), evidence of an agreement made subsequent to the execution of the written agreement, even though it may have the effect of adding to, changing, modifying, or altogether abrogating the parties' written agreement, is not barred by the parol evidence rule. *Brunson v. Gladish*, 125 S.W.2d 144, 147 (Tenn. 1939); *Univ. Corp. v. Wring*, No. W2011-01126-COA-R3-CV, 2012 WL 4078517, at *6 (Tenn. Ct. App. Sept. 18, 2012).  After a written contract is made, it can be modified by the express words of the parties either verbally or in writing.  *Lancaster v. Ferrell Paving, Inc.*, 397 S.W.3d 606, 611 (Tenn. Ct. App. 2011).

There is no evidence in the record to establish whether the alleged verbal contract was entered before or after the execution of the parties' written agreement on November 28, 2008.[9]  If the verbal contract was created subsequent to the written agreement, the parol evidence rule would not apply to the admission of evidence regarding its formation.  We therefore hold that the trial court erred in determining that the defendants established Schwartz would not be able to prove the existence of the contract at trial.

Diagnostix emphasizes that Schwartz has not presented any evidence to show that there was a definite meeting of the minds on the terms of the alleged verbal contract or that the alleged verbal agreement was entered after the execution of the written agreement.[10]  However, because the defendants did not satisfy their initial burden, Schwartz was not required to produce evidence to survive summary judgment under *Hannan*.  *See Hannan v. Alltel Pub'l Co.*, 270 S.W.3d 1, 5 (Tenn. 2008) ("If the moving party does not satisfy its initial burden of production, the court should dismiss the motion for summary judgment."); *see also White v. Target Corp.*, No. W2010-02372-COA-R3-CV, 2012 WL 6599814, at *7 (Tenn. Ct. App. Dec. 18, 2012) (applying *Hannan*).  In light of the foregoing, we must vacate the trial court's grant of summary judgment to the defendants on Schwartz's claim for breach of a verbal contract.

[9]In Schwartz's first amended complaint, Schwartz alleges that the verbal contract was entered "[i]n late 2008."

[10]Diagnostix points out that Schwartz stated during depositions that he could not remember whether the alleged verbal agreement was reached before or after the execution of the written agreement.

## B. Fraud and Misrepresentation Claim

Next, Schwartz contends that the trial court erred in dismissing his claim for fraud and misrepresentation on the grounds that it was not pled with particularity in his original complaint. The basic elements for a claim of fraud are: (1) an intentional misrepresentation with regard to a material fact, (2) knowledge of the representation's falsity, (3) injury to the plaintiff caused by reasonable reliance on the representation, and (4) the misrepresentation relates to an existing or past fact, or, if based on promissory fraud, the misrepresentation embodies a promise of future action with no present intent to perform. *Shahdar v. Global Housing, Inc.*, 983 S.W.2d 230 (Tenn. Ct. App. 1998). Schwartz's allegations of promissory fraud are contained in the following paragraphs of the complaint:

33. Defendants, either individually or through their officers and/or agents, intentionally misrepresented material facts and/or created a false impression to Plaintiffs with full knowledge of their falsity. Specifically, Defendants intentionally represented to Plaintiffs that if Schwartz developed contacts and leads which culminated in sales orders, and/or contracts for the Tem-PCR product from health care providers, that Plaintiffs would be fairly compensated for their performance. In reality, Defendants never intended to compensate Plaintiffs and had previously conspired to dupe Schwartz into believing that his hard work and efforts would be compensated considerably, knowing that after Schwartz developed contacts and leads, that Defendants would prematurely terminate any agreement with Plaintiffs and refuse to pay Plaintiffs accordingly.

34. Defendants not only fraudulently conspired in the aforementioned manner with respect to Plaintiffs, but also did so with other representatives and/or "sub-distributors" of the Tem-PCR product. Defendants' overall pattern of conduct with respect to other representatives and/or "sub-distributors" is evidence of Defendants' nefarious plots and schemes.

35. Alternatively, Defendants (either individually or through their officers and/or agents) negligently made material misrepresentations to Plaintiffs.

36. Plaintiffs relied upon Defendants' representations and performed work which led to or will lead to sales, orders, and/or contracts for the Tem-PCR product from Defendants. Further, in reliance upon Defendants' representations, Plaintiffs developed marketing materials to assist DNA and Diatherix in marketing the Tem-PCR technology to prospective purchasers and end-users.

37.  As a result of Defendants' misrepresentation and/or fraud, Plaintiffs have suffered injury, harm and damages, and are likely to suffer future injury, harm and damages as well.  Plaintiffs are entitled to actual damages and punitive damages as a result of Defendants' misrepresentation and fraudulent conduct.

The trial court dismissed Schwartz's fraud claim after finding that it failed to meet the specificity requirement of Tennessee Rule of Civil Procedure 9.02, which states that "the circumstances constituting fraud or mistake shall be stated with particularity."  "To pass the particularity test, the actors should be identified and the substance of each allegation should be pled." *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 41 (Tenn. Ct. App. 2006).  This Court recently stated that particularity requires reference to "a single or specific person, thing, group class, occasion, etc., rather than to others or all." *Diggs v. Lasalle Nat'l Bank Ass'n*, 387 S.W.3d 559, 565 (Tenn. Ct. App. 2012).

Here, Schwartz's claim for fraud and misrepresentation was not alleged with particularity in his complaint.  The allegations in the complaint are general and do not identify any particular defendant as making false and misleading statements.  Schwartz does not allege any particular facts that establish an intent to deceive; rather the complaint generally alleges that the defendants acted with such an intent.  Moreover, we note that the complaint does not contain any particular allegations regarding the reasonableness of Schwartz's reliance on the alleged fraudulent statements.  Accordingly, Schwartz's fraud and misrepresentation claim was properly dismissed.

### C.  Attorney's Fees

Following the dismissal of Schwartz's claims, the trial court awarded Diagnostix $179,162.34 in attorney's fees and costs pursuant to a clause in the parties' written agreement that provided for such an award to the prevailing party in a lawsuit to resolve disputes arising from or related to the agreement.  The court entered the judgment jointly and severally against both M.L. Schwartz & Associates, Inc. and Michael L. Schwartz personally.  Each of the parties raises issues related to the amount of the trial court's award.  Additionally, Schwartz contends that the trial court erred in finding that he should be personally liable for the award.

We first address Schwartz's claim that he is not personally liable for the attorney's fee award.  Schwartz argues that the parties' written agreement was between Diagnostix and M.L. Schwartz and Associates, Inc. only and that the trial court therefore erred in holding him personally liable for the award of fees and costs.  Whether or not Schwartz was personally bound by the agreement requires us to interpret the contract to ascertain the parties' intent. *See Bill Walker & Assocs., Inc., v. Parrish*, 770 S.W.2d 764 (Tenn. Ct. App.

1989) (interpreting the parties' written contract to determine whether a party was personally liable under the contract). If a contract is ambiguous, we may look outside the four corners of the document and consider extrinsic evidence to determine the parties' intent. *Cummings Inc. v. Dorgan*, 320 S.W.3d 316, 333 (Tenn. Ct. App. 2009).

The parties' agreement is ambiguous regarding the parties' intent to personally bind Schwartz in addition to M.L. Schwartz and Associates, Inc. The designation of the "Representative" as "Michael L. Schwartz dba M.L. Schwartz & Associates" indicates that an individual person, Michael Schwartz, is doing business under the name of "M.L. Schwartz & Associates" and is agreeing to be bound by the contract. *See Bill Walker & Assocs.*, 770 S.W.2d at 770. However, Schwartz's signature on the last page of the contract is preceded by the handwritten name "M.L. Schwartz & Assoc. Inc." and is followed by his title as President. "A corporate officer's signature, preceded by the corporation's name and followed by words denoting the officer's representative capacity, binds only the corporation." *Id.* Accordingly, the contract is ambiguous regarding whether the parties intended Schwartz to be personally liable, and we must look to extrinsic evidence to determine the parties' intent.

We need not look far to determine that Schwartz intended to be personally bound to the contract. In his first amended complaint, Schwartz designated himself in his individual capacity as "Schwartz." Schwartz did not use any tag to designate the entity M.L. Schwartz and Associates, Inc. The complaint states that "[i]n late November or early December 2008, DNA and Schwartz entered into a Representative Agreement, a copy of which is attached hereto as Exhibit 1." Under the doctrine of judicial estoppel, a party is not permitted to take a position directly contrary to, or inconsistent with, one that party previously assumed. *Marcus v. Marcus*, 993 S.W.2d 596, 602 (Tenn. 1999). Because Schwartz previously asserted that he personally entered the agreement with Diagnostix, he is barred from taking a contrary position now. We find no error in the trial court's decision to hold Schwartz personally liable under the parties' agreement.

Although the parties take issue with the amount of attorney's fees awarded, we note that our opinion necessitates further proceedings in the trial court regarding the existence of a verbal contract. As such, and given that the parties may seek fees associated with this appeal, we vacate the trial court's award of attorney's fees with instructions for the trial court to consider the attorney fee issue after a determination is made regarding an verbal contract. In doing so, we do not express any opinion regarding whether attorney's fees are available with respect to the verbal contract portion of Schwartz's claim.

### III. CONCLUSION

We affirm the trial court's grant of summary judgment to Diagnostix on Schwartz's claim that Diagnostix breached a duty of good faith in terminating the parties' agreement. We affirm the trial court's grant of summary judgment to Diagnostix on Schwartz's claim that Diagnostix breached a duty of good faith by failing to provide adequate sales support. We reverse the trial court's grant of summary judgment to Diagnostix on Schwartz's claim for breach of a verbal contract. We vacate and remand the trial court's award of attorney's fees and costs for reconsideration after issues related to the verbal contract are resolved.

The decision of the trial court is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion. Costs on appeal are taxed one-half against the appellees, Diagnostix Network Alliance, LLC, and Clyde Spencer, and one-half against the appellants, Michael L. Schwartz and M.L. Schwartz & Associates, Inc., and their surety, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE