IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 6, 2021 Session

### ERIC NEFF ET AL. v. DENNIS WOOD ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 16-0662-IV      Russell T. Perkins, Chancellor**

_____

### No. M2020-00748-COA-R3-CV

_____

A property owner sued a neighboring property owner for breach of an easement agreement. The defendant filed a countercomplaint alleging that the plaintiff committed the first material breach. The trial court found that the defendant had violated the agreement, but the violation did not rise to the level of a material breach. The court also found that the defendant had not proven that the plaintiff breached the agreement. So the court dismissed both the complaint and the countercomplaint. But the court also granted detailed declaratory relief. On appeal, we conclude that the court erred in failing to award attorney's fees as mandated by the easement agreement. The court also erred by imposing a construction deadline on one party that was not included in the easement agreement. In all other respects, we affirm.

**Tenn. R. App. P. Appeal as of Right; Judgment of the Chancery Court Reversed in Part; Affirmed in Part; and Case Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Jonathan Cole and Austin K. Purvis, Nashville, Tennessee, for the appellants, Eric S. Neff and Amy Price Neff.

Autumn L. Gentry, Nashville, Tennessee, for the appellees, Susan C. Wood and Dennis E. Wood.

# OPINION

## I.

### A.

Over a three-year span, Eric and Amy Neff acquired approximately 96 acres of undeveloped land in the Bells Bend area of Davidson County. They were attracted by the area's rural character and the proximity to family. The Neffs planned to live and raise livestock on the property.

Dennis and Susan Wood lived on adjacent property. Both the Woods and the Neffs bought their respective parcels subject to a recorded Easement Agreement. Reciprocal easements were located along the southern edge of the Wood property and the northern edge of the Neff property where the two properties met. A private gravel road ran the length of the easement tract.

The previous owners of these properties—Geoffrey and Deborah Jones and the heirs of J.T. Owen—granted each other reciprocal easements to create the private road. At that time, neither property had been developed. Geoffrey Jones and his wife granted the Owen heirs an easement across an 18-foot-wide strip along their southern boundary. The Owen heirs, in turn, granted Mr. Jones and his wife an easement over an identical strip along their northern boundary. Together, these reciprocal easements created an easement tract that measured 36-feet-wide by approximately 1440 feet long.

Mr. Jones and his wife sold most of their property to the Woods. Sometime later, the Neffs acquired a large portion of the property of the Owen heirs. The Woods have a residence on their property; the Neffs do not.

The Neffs and the Woods had a cordial first meeting. The Neffs complimented their neighbors on the condition of the gravel road and offered to pay a portion of any maintenance or repair costs. But the Woods declined the offer. Instead, Mr. Wood offered to purchase the Neffs' half of the easement tract. As Mr. Wood pointed out, the Neffs could build another access road from a different direction; part of the Neff property abutted Ashland City Highway. The Neffs were open to discussing a possible buyout.

The Neffs told the Woods about their plan to live and raise livestock on their property. They believed strongly in the benefits of locally-sourced food. They had previously owned a farm and butcher shop in Virginia. The Neffs also owned horses, which they wanted to bring to their property. Although the Woods did not believe that the Neffs had the right to use the easement to transport their horses, they agreed. Mr. Wood later explained that he was merely being cooperative while the parties were in negotiations.

2

Meanwhile, the Neffs moved forward with their plans. They cleared and fenced several acres, ordered soil studies, obtained a septic permit, hired a builder and an architect, and applied for a construction loan. They had a pole barn constructed to store materials. They also verified that their livestock plans complied with local zoning regulations.

Upon further research, the Neffs discovered that the easement tract provided the most convenient and cost-effective access to their property. The alternate route was rugged and steep, making construction of a new road prohibitively expensive. So the Neffs rejected the Woods' buyout offer. Although negotiations continued, the parties were never able to reach an agreement on an acceptable price.

As the prospects for a buyout faded, so did the spirit of cooperation. The Neffs received a letter from the Woods insisting on strict compliance with their interpretation of the Easement Agreement. The Neffs were informed that anyone wishing to use the easement tract "before there is a residence on the [Neff] property" would need express permission from the Woods. The Woods specifically denied the Neffs permission to use the easement "to bring food or water to your property for the horses, or to otherwise care for the horses, or to ride or train the horses." The Woods indicated that they would not hesitate to resort to legal action to enforce these restrictions, if necessary.

The Neffs saw the Woods' letter as a threat. They responded with letters of their own detailing the Woods' failures to strictly comply with another provision of the Easement Agreement. The Easement Agreement specified that both parties must agree before undertaking any repairs or maintenance for the easement tract. They requested that the Woods immediately cease various activities within the easement and remove a recently-added wooden fence in the easement area. When they received no response to their first letter, the Neffs sent a follow-up letter through their attorney.[1]

The letters failed to elicit a response from the Woods. So the Neffs filed suit for breach of contract, seeking both damages and injunctive relief. In their answer, the Woods admitted that "they constructed a wooden fence a portion of which, at the time of commencement of this action, extended [into the easement tract.]" They also admitted that they had performed repairs and maintenance within the easement tract. But they claimed that the Neffs had also breached the Easement Agreement by using the easement for purposes other than ingress and egress to a residence. And they filed a counterclaim seeking revocation of the Neffs' easement rights based on their unauthorized use.

---

[1] The Woods maintained that they never received the second letter.

B.

The court heard testimony from both sides at the ensuing bench trial. The parties agreed that their respective rights and responsibilities were governed by the terms of the Easement Agreement.

The Neffs did not claim that they were damaged by the Woods' efforts to maintain the easement tract. Rather, their complaint was that the Woods acted without their permission. The Easement Agreement provided that repairs and maintenance were to be joint decisions. The newly-built fence was especially concerning for the Neffs as it could easily be used to block their use of the easement.

Mr. Wood freely admitted that he unilaterally repaired and maintained the easement tract after the Neffs purchased their property. He regularly mowed grass in and along the driveway, trimmed overhanging branches, and replaced eroded gravel. Before the Neffs filed suit, he never asked their permission to do what he deemed necessary to maintain the gravel road. And he denied that he needed their permission to maintain or repair the easement tract. His efforts kept the easement tract usable.

He acknowledged that he had a wooden fence built within the easement tract. He pointed out that the Neffs did not initially object to the fence. And the fence did not actually impede their use of the easement tract. But he admitted that the fence was specifically designed to connect to an old gate on the property. And it had been built to discourage others from using the gravel road. The fence was moved after this lawsuit was filed.

Mr. Wood acknowledged that he told the Neffs that they could not use the easement without his permission before they constructed a residence on their property. He changed his tune at trial, agreeing that the Neffs could use the easement during actual construction. But he objected to the Neffs' use of the easement for other purposes, such as caring for their livestock or hunting. In his view, these were non-residential uses prohibited by the Easement Agreement.

The Neffs maintained that they were in the process of building a residence. They described the multiple steps that they had taken to realize their dream. They admitted that progress had been slow. But they maintained that a host of environmental and cost factors had to be solved before actual construction could begin. And in light of the Woods' unreasonable behavior, they had temporarily put their construction plans on hold.

The Neffs acknowledged that they used the easement tract to access their property and allowed others to do so as well. But they contended that all of their uses had been for residential purposes. They used the easement when they were preparing to build their residence and when they were bringing their horses and sheep to the property. To the Neffs, caring for livestock fit neatly within the definition of residential use in this rural

4

neighborhood.  They conceded that they also allowed hunters to access their property through the easement tract.  In their view, hunting was also an allowed residential activity in the area.

C.

After hearing all the proof, the court determined that neither party had materially breached the Easement Agreement.  Although the Woods had violated the repairs and maintenance provision, their conduct was "overwhelmingly constructive and protective of the parties' interests."  The court reasoned that this violation did not constitute a material breach "under the unique circumstances of this case."  And the Woods had failed to prove that the Neffs' use of the easement violated the agreement.  The Neffs had "largely used the easement in preparation for building a residence, which obviously c[ame] within the letter and intent of the easement agreement."  And virtually all of their other uses were done with the Woods permission or were residential in character.  Because neither side had proven a material breach, the court refused to award attorney's fees or any of the requested injunctive relief.  The court also denied the Woods' request to revoke the Neffs' right to use the easement.

But the court, on its own initiative, issued detailed declaratory relief.  The court declared that both parties had full and equal rights to use the easement tract.  The Woods could repair and maintain the easement tract, "using good faith and reasonableness."  And the Neffs were responsible for half of all future maintenance expenses.  But improvements to the easement required a joint decision.  The court also ordered the Neffs to begin construction of their residence within the next 120 days.  The court declared that the Neffs had the right to use the easement for construction purposes.  But they were precluded from using the easement or allowing others to use the easement for hunting or for any commercial activities.  Finally, the court decreed that the Neffs could transport their livestock over the easement, but only for personal, not commercial, purposes.

In response to the Neffs' motion to alter or amend, the court revised its decision, changing the deadline to commence construction to 180 days.  And the court decreed that, during the pendency of this action, all decisions regarding repairs and maintenance of the easement would be joint.

**II.**

Both sides raise issues on appeal.  The Woods contend that the trial court erred in dismissing their counterclaim.  They argue that the evidence preponderates in favor of a finding that the Neffs violated the Easement Agreement, thus entitling the Woods to revoke the easement.  In the alternative, the Woods complain that the court required joint approval of all maintenance and repair decisions.  The Neffs' issues relate primarily to the relief awarded by the trial court.  Specifically, the Neffs contend that the trial court erred in failing

5

to grant their request for attorney's fees, imposing a construction deadline, and placing unwarranted restrictions on their use of the easement tract.

Our review of the trial court's factual findings after a bench trial is de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. TENN. R. APP. P. 13(d). Evidence preponderates against a finding of fact if the evidence "support[s] another finding of fact with greater convincing effect." *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). We review the trial court's conclusions of law de novo with no presumption of correctness. *Kaplan v. Bugalla*, 188 S.W.3d 632, 635 (Tenn. 2006).

## A.

The Woods contend that the evidence preponderates in favor of a finding that the Neffs violated the Easement Agreement. As they see it, the sole purpose of the easement was ingress and egress to a residence. So the Neffs violated the Easement Agreement by using and allowing others to use the easement tract when they did not have a residence on their property. And they maintain that the Neffs' material breach entitled them to revoke the easement.

Use of an express easement "must be confined to the purpose stated in the grant of the easement." *Coolidge v. Keene*, 614 S.W.3d 106, 118 (Tenn. Ct. App. 2020), *perm. app. denied*, (Tenn. Oct. 7, 2020) (citation omitted). As relevant here, the Easement Agreement provides

> 2. Use of Easements. It is specifically intended that the easement hereby granted by each of the parties shall be used solely for ingress and egress of vehicles and persons from Old Hickory Boulevard to the residences now or hereafter situated on the Jones Property and the Owen Heirs' Property. Parking of vehicles is not to be permitted. The easements are not to be used to benefit or serve any non-residential use or activity on the Jones Property or the Owen Heirs' Property.
>
> 3. Restrictions of Use. Notwithstanding anything to the contrary contained herein, it is intended that the easements will serve a maximum of two (2) residences on the Owen Heirs' Property and a maximum of two (2) residences on the Jones Property. It is not intended that the easements will serve or benefit any other properties or more than two (2) residences on either . . . the Owen Heirs' Property or the Jones Property. . . . If a party should violate this provision, then the other party may, without further notice, revoke the grant of easement made herein and the terms of this Agreement.

6

The Easement Agreement is a contract. A "cardinal rule of contract interpretation is to ascertain and give effect to the intent of the parties." *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006). Here, the parties' intent is plain. The easement tract was intended to be used for ingress and egress to "the residences now or hereinafter situated" on the two properties. Conversely, it was not intended to be used "to benefit or serve any non-residential use or activity" on these properties. Based on this language, we conclude that the Easement Agreement authorized the parties to use the easement tract to access their property for residential purposes, including preparation for building a home.

Even so, the Woods argue that the Neffs are not in the process of building a home. But the court found otherwise. The evidence does not preponderate against the court's finding that the Neffs had taken affirmative steps to build a residence on their property.

The Neffs' use of the easement tract in preparation for building a home was within the easement's intended purpose. Because the Woods did not prove that the Neffs violated the Easement Agreement, the trial court did not err in refusing to revoke the Neff's use rights.

### B.

In the alternative, the Woods complain that the court erred in granting the Neffs' motion to alter or amend the judgment. *See* TENN. R. CIV. P. 59.04. We review the trial court's decision for an abuse of discretion. *See Harmon v. Hickman Cmty. Healthcare Servs., Inc.*, 594 S.W.3d 297, 305 (Tenn. 2020). A court abuses its discretion when it applies the wrong legal standard, reaches "an illogical or unreasonable decision," or bases its decision "on a clearly erroneous assessment of the evidence." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

The court's original ruling allowed the Woods to make repairs and maintenance decisions "using good faith and reasonableness." The revised ruling required joint approval "during the pendency of this action." The Woods argue that they should have sole authority over these decisions because they live on the property. And the court's requirement serves no purpose other than to invite conflict between the parties. But the court's revised ruling follows the plain language of the contract. The Easement Agreement expressly provided that "[a]ll decisions regarding maintenance or repairs . . . shall be joint decisions" of both parties. There is no ambiguity here. *See Wood v. Metro. Gov't of Nashville & Davidson Cty.*, No. M2008-02570-COA-R3-CV, 2009 WL 2971052, at *3 (Tenn. Ct. App. Sept. 16, 2009). "It is not the role of the courts, even courts of equity, to rewrite contracts for dissatisfied parties." *Snyder v. First Tenn. Bank, N.A.*, 450 S.W.3d 515, 518 (Tenn. Ct. App. 2014).

A Rule 59.04 motion "provide[s] the trial court with an opportunity to correct errors before the judgment becomes final." *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App.

2005). And that is exactly what occurred here. The court did not abuse its discretion when it enforced the parties' agreement as written. *See Allmand v. Pavletic*, 292 S.W.3d 618, 630 (Tenn. 2009) (explaining that, when contract language "is clear and unambiguous, the literal meaning controls").

## C.

The Neffs argue that they are entitled to recover their attorney's fees based on the Easement Agreement. *See Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009) (explaining that a litigant may recover attorney's fees if a contract "creates a right to recover attorney's fees"). Whether the Neffs are entitled to an award of attorney's fees on this basis is a question of law, which we review de novo. *See id.*; *see also Eberbach v. Eberbach*, 535 S.W.3d 467, 479 (Tenn. 2017) (holding that "our courts do not have discretion to deny an award of fees mandated by a valid and enforceable agreement between the parties").

The Easement Agreement authorizes an award of attorney's fees. The contract provides that

> Each of the parties hereby agrees to indemnify and hold harmless the other for any loss, damage, or injury, including attorneys' fees, caused to the other party by reason of acts or omissions of the party.

The trial court refused to award attorney's fees because neither party had shown a material breach or incurred any actual damages. We conclude that the trial court misconstrued the contractual language.

In *Wood v. Metropolitan Government of Nashville and Davidson County*, we considered whether the Woods were entitled to an award of attorney's fees based on this same language. *See Wood*, 2009 WL 2971052, at *5. In that case, the Woods had filed suit against Lewis Johnson, a previous property owner, alleging breach of the Easement Agreement. *Id.* at *2, *5. Mr. Johnson had arranged for Nashville Electric Service to install electric service for his property through the easement tract. *Id.* at *2. The Woods objected. *Id.* The trial court ruled "that Johnson did not breach the agreement; that Johnson had a right to use the easement for utilities; and that neither party was entitled to an award of attorney fees." *Id.*

On appeal, we held that the Easement Agreement unambiguously required joint approval before utilities were placed in the easement tract. *Id.* at *3-4. And the Woods did not consent. Still, Mr. Johnson had not actually violated the agreement. *Id.* at *5. The Woods had filed suit "before anything happened within the easement." *Id.* Even so, we ruled that the Woods were entitled to an award of attorney's fees. *Id.* The Easement Agreement "plainly says that one party agrees to indemnify the other party for attorney

8

fees caused by the first party's acts." *Id.* Because Mr. Johnson's actions caused the Woods to seek judicial relief, they were entitled to an award of reasonable attorney's fees. *Id.*

We face a similar situation here. The Woods' actions caused the Neffs to file this action. The Woods treated the easement tract as if it were their own. They routinely performed maintenance and repairs without asking the Neffs' permission. They built a wooden fence within the easement tract to discourage others from using the gravel road. And they sent the Neffs a letter insisting that the Neffs had no right to use the easement tract without a residence on their property. The Woods' intransigence brought the Neffs' construction plans to a halt. The trial court found that the Woods became unreasonable after the Neffs rejected their buyout offer. Under these circumstances, the Neffs were entitled to an award of attorney's fees.[2]

D.

Lastly, we turn to the Neffs' challenges to the court's declaratory relief. As the trial court noted, "[e]ach couple ha[d] a vision of how the Easement should be used and maintained." These visions were "virtually impossible" to achieve without some level of cooperation. While the court determined that neither party had committed a material breach, they were clearly at an impasse. Rather than leaving the parties to muddle forward on their own, the court chose to provide some guidance in the form of declaratory relief.

It is within a court's discretion "to fashion an appropriate equitable remedy given the particular circumstances of each case." *Hixson v. Am. Towers, LLC*, 593 S.W.3d 699, 718 (Tenn. Ct. App. 2019). We will not disturb the court's declaratory relief absent an abuse of discretion. *See Lee Med. Inc.*, 312 S.W.3d at 524.

According to the Neffs, the court's declaratory relief went beyond the plain language of the Easement Agreement. In the absence of any ambiguity, the court's role is to enforce the parties' agreement as written. *Pylant v. Spivey*, 174 S.W.3d 143, 152 (Tenn. Ct. App. 2003). We will not "make a new contract for parties who have spoken for themselves." *Id.* Still, a duty of good faith and fair dealing is implicit in the performance of all contracts. *Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 686 (Tenn. 1996). The scope of this implied duty depends on the contract at issue. *Id.* The implied duty "protects the parties' reasonable expectations as well as their right to receive the benefits of their agreement." *Dick Broad. Co. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 666 (Tenn. 2013) (citation omitted). When warranted, our courts will impose a standard of reasonableness in the performance of a contract. *Id.* at 667.

---

[2] The Woods also seek an award of attorney's fees based on the Easement Agreement. Under these facts and the terms of the Easement Agreement, they are not entitled to award of attorney's fees.

The Neffs complain that the trial court precluded them from allowing hunters to use the easement tract to access their property. They also take issue with the court's limitation on their use of the easement tract to transport their livestock. The court ruled that the Neffs could use the easement tract to transport their livestock "housed in vehicles. . . as long as this activity is for personal[,] . . . non-commercial purposes." The Neffs only have the right to use the easement tract to access their property for residential purposes. And use of the easement is specifically restricted to the ingress and egress of "vehicles and persons." Given the contractual language, the court did not abuse its discretion in imposing these restrictions.[3]

But the court also ordered the Neffs to begin construction on a residence within 180 days after the resolution of the appeal process. This portion of the court's equitable relief went too far. The duty of good faith "does not extend beyond the agreed upon terms of the contract and the reasonable contractual expectations of the parties." *Wallace*, 938 S.W.2d at 687. Nor may it be used to rewrite the parties' agreement. *Lamar Advert. Co. v. By-Pass Partners*, 313 S.W.3d 779, 791 (Tenn. Ct. App. 2009).

No residences had been built on either property when the Easement Agreement was executed. The parties specified that the reciprocal easements were for the "ingress and egress of vehicles and persons from Old Hickory Boulevard **to the residences now or hereafter situated**" on the two properties. The court found that the Neffs intended to build a residence and had taken affirmative steps toward that goal. Nothing in the Easement Agreement required them to begin construction at a certain time. The addition of such a requirement was error. The Woods did not have a reasonable expectation that the Neffs would begin construction by a specified time based on the language of the Easement Agreement.

## III.

The evidence does not preponderate against the court's finding that the Neffs did not violate the Easement Agreement. The court did not abuse its discretion by requiring joint approval of repair and maintenance decisions or by imposing reasonable restrictions on the Neffs' use of the easement tract. But the court erred in imposing a construction deadline on the Neffs not specified in the Easement Agreement and in failing to award the Neffs their reasonable attorney's fees. We modify the judgment to remove the requirement that the Neffs begin construction of a residence within 180 days. We remand this case for a determination of reasonable attorney's fees incurred at trial and on appeal and for further proceedings consistent with this opinion.

---

[3] Contrary to the Neffs' argument on appeal, we cannot fault the court for not imposing these same restrictions on the Woods. The Woods used the easement tract to access their residence. They did not seek to use the easement tract for any other purposes.

_____
      s/ W. Neal McBrayer
W. NEAL McBRAYER, JUDGE